The judgment of the Court of Civil Appeals affirming the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court.

## TEXAS CO. v. CAIN et al.

No. 6104.

Court of Civil Appeals of Texas. Texarkana.

March 2, 1944.

Rehearing Denied March 23, 1944.

T. J. Lawhon, of Houston, and R. B. Howell, of Winnsboro, for appellant.

Harrington & Harrington, of Longview, for appellees.

HARVEY, Justice.

Plaintiffs (appellees) filed this suit in the District Court of Wood County to partition the "oil and gas leasehold estate" in a 6.29-acre tract of land, asserting title to three-fourths of the estate and alleging that the defendant (appellant) owned the other one-fourth interest. It was admitted in open court by the defendant upon the trial of the case that the plaintiffs were the owners of an undivided three-fourths interest in the tract in suit as heirs of the common source of title, H. S. Cobb, unless their record ownership could be defeated by the Texas Company showing either a limitation title in its lessors, who owned the other one-fourth interest as heirs of such common source of title, or could establish title in its lessors by reforming certain deeds so as to include the tract in question in those deeds. It was not disputed that the tract involved in the suit was not included in the description given in the deeds as executed. The case was tried to a jury, and certain issues were submitted to them by the court. The jury failing to agree, the case was withdrawn from them and the court, having concluded that there was not sufficient evidence to present a fact issue, either on the plea of limitation or on that of reformation of the deeds, entered judgment partitioning the leasehold estate as prayed for. From this judgment the Texas Company presents this appeal.

H. S. Cobb, the common source of title, at the time of his death in 1922, owned a rectangular tract of land in Wood County, Texas, containing about 104.29 acres of the H. F. Robinson survey. Originally, he owned this entire survey, but had sold several tracts out of the north and central portions of the survey, leaving about 120 acres, including the above tract. This land, under his will, descended to his four children equally, two of whom had predeceased their father. J. H. Cobb, one of these deceased children, left surviving him five children, who are the lessors of the Texas Company, appellant. One of these five children, C. S. Cobb, desired to buy what he called "the Cobb tract", and in 1926 the executors of the will of H. S. Cobb agreed to sell him the tract for a sum of fifteen dollars per acre. With this in view, W. A. Morrison, county surveyor of Wood County, was employed to survey the land, calculate the acreage, and make the field notes. He made the survey, prepared the field notes, calculated the tract to contain ninety-three acres, and the consideration in the deed was recited as $1,295. The corners called for in the deed from the executors of the H. S. Cobb estate to C. S. Cobb on the ground are as contended for by appellees and as admitted by appellant. Later, in 1931, C. S. Cobb, having some misgivings about the validity of the deed delivered to him by the executors, secured a deed from the appellees to the "so-called 93 acre tract", the description in this deed being the same as that in the deed from the executors, but in this latter deed the grantors (appellees) reserved unto themselves four-fifths of the royalties and retained a vendor's lien note for the recited consideration of $1,395. Still later, on January 14, 1941, another correction deed was executed and delivered by the same parties to H. J., C. S., R. A., and Ruby Mae Cobb. In 1937, J. O. Cobb purchased the 93-acre tract from C. S. Cobb. H. M. Harrington, Jr., and B. B. Orr, lessees of the three-fourths leasehold interest through three of the children of H. S. Cobb, are parties to this suit.

The first point presented by appellant for review is that the trial court erred in overruling its plea in abatement, which raised the question of nonjoinder of indispensable parties. The appellant and appellees, with Harrington and Orr, are the joint owners of all interests in the oil and gas leasehold estate, and were before the court under the pleadings of the plaintiffs. Such plaintiffs also are the record owners of the three-fourths interest in the fee simple estate of the 6.29-acre tract. The lessors of the Texas Company, representing the other one-fourth interest in the (fee simple) estate, were impleaded by the Texas Company on its cross-action for reformation of the deeds of 1926, 1931, and 1941.

■ Under Article 6083, R. C. Statutes of Texas (New Rule of Procedure No. 756), and the authorities construing this statute, a partition among oil and gas leasehold estate owners is permissible. 32 T.J. 165. In the case of Henderson v. Chesley, Tex.Civ. App., 273 S.W. 299, 302, the court uses this language: "It is also well settled generally by the courts in the United States that mineral rights in the land, being an estate in freehold, are subject to partition (citing cases). * * * It is clear to our minds that the Legislature intended to use the term 'joint owners' in its broadest sense. In that sense he is not necessarily one owning the fee simple, or one having in the property the highest estate it will admit of, but is one who owns any interest in real estate entitling him to joint possession and use." To the same effect is the case of Stanolind Oil & Gas Co. v. Simpson-Fell Oil Co., Tex.Civ. App., 85 S.W.2d 325, 331, the court in that case using this language: "Nor, in our opinion, is the right asserted by appellants defeated because the estates involved are oil, gas, and mineral interests. The right to compel partition of such interests by joint owners is conferred by statute."

■ In, the case under consideration, it appears that all the owners of the leasehold estate in the 6.29-acre tract were parties to the suit. In addition, all the owners of the fee simple and other interests were before the court, the lessors of the Texas Company having been impleaded on its cross-action for reformation of the deeds in question. But, it is insisted, such impleaded parties were in the suit only in so far as the plea for reformation is concerned, and not as to the partition proceedings. The record discloses that such impleaded par-

ties were duly cited, appeared in court, and participated in the trial. The issues of limitation and of reformation were presented by the pleadings, and evidence introduced upon those phases of the case, thus vitally affecting the title of such impleaded parties. They testified with respect to those issues and had knowledge of the nature of the suit. In effect, they were defending the title to the leasehold interest that they had conveyed to their lessee. Hanrick v. Gurley, 93 Tex. 458, 55 S.W. 119, 56 S.W. 330. Upon this point we quote the following from 1 Greenleaf on Evidence, p. 656: "It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger he may well he held bound. * * * But to give full effect to the principle by which parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings. * * * Hence, all privies, whether in estate, in blood, or in law, are estopped from litigating that which is conclusive upon him with whom they are in privity." Also, the rule is stated in American Jurisprudence, Sec. 179, as follows: "The phase of the doctrine of res judicata precluding subsequent litigation of the same cause of action is much broader in its application than a determination of the questions involved in the prior action; the conclusiveness of the judgment in such case extends not only to matters actually determined, but also to other matters which could properly have been determined in the prior action. This rule applies to every question falling within the purview of the original action, in respect to matters of both claim and defense, which could have been presented by the exercise of due diligence."

Under the facts of this case, we are of the opinion that the lessors of the Texas Company, made defendants on the cross-action for reformation, became parties for all purposes. All necessary parties being before the court, the action of the trial court in overruling the plea in abatement of the defendant was correct.

■■ With reference to whether or not the evidence was sufficient to present an issue of fact to submit to the jury on the cross-plaintiff's action for reformation of the deeds in question, the testimony is

meagre as to what occurred at the time of the execution and delivery of each one of these three instruments. The deed made by the executors of the estate of H. S. Cobb to C. S. Cobb in 1926 was considered by grantee therein as ineffective to pass title. The testimony of W. W. Cain was that the executors agreed to sell to C. S. Cobb 93 acres of land at $15 per acre and that this was all they sold him. C. S. Cobb testified that he wanted to buy "the Cobb tract." The description of the deed is clear and unambiguous. The surveyors stated that the corners of the tract on the ground are where his field notes locate them. There is no contention that any specific lines or boundaries of the land to be sold were pointed out at the time of or before the sale. The correction deed executed in 1931 by some of the heirs of H. S. Cobb to C. S. Cobb contains the same description as the 1926 deed, with the exception that the call for the entire west line was omitted. The record is silent as to the circumstances surrounding the execution of this deed in 1931. In 1937, J. O. Cobb, who had purchased the "93 acre tract" from C. S. Cobb, leased it to the Texas Company. The Texas Company through its employee, R. E. Witty, presented still another correction deed to the heirs of H. S. Cobb for signature, the description in this deed being the same as in the 1926 and 1931 deeds, except that the omitted call in the 1931 deed was included. Mr. Witty testified that the grantors named in this last-mentioned deed wanted to know the purpose for which they were being asked to sign it. He replied that "It was the correction of an attempted conveyance of the same land at prior dated; * * * that it covered all the land of the H. S. Cobb estate in the Robinson survey which had been attempted on two occasions to be conveyed by the H. S. Cobb heirs to our lessor, Cobbs." Neither he nor the grantors in the deed at that time knew of the existence of the 6.29-acre tract. In this case, as a basis for a reformation of the deeds, it must be made to appear that there was an agreement between the parties thereto, together with the terms of such agreement; that a mistake was made in drafting the deeds so that they did not express the true agreement of the parties; and that such mistake was mutual. The rule is stated in the case of Williams v. Nettles, Tex.Civ.App., 56 S.W.2d 321, 322, as follows: "The general rule is that, in order to justify a reformation or correction of a deed for mistake, the mistake must be mutual, that is, common to all the parties to the contract, and even then the evidence of such mutual mistake must be clear and convincing. * * * While there was some evidence tending to show that Nellie Kilgore Williams, the grantee in said deed, believed that by such conveyance she became the owner of the west 10 acres instead of the east 10 acres of said 20-acre tract, there was no evidence that the grantor, Mary Ford, intended to convey any land other or different from that actually described in the deed."

We quote the following expression from the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, by our Supreme Court: "From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'." The cases of Crabb v. Texas Pac. Coal & Oil Co., Tex.Com.App., 249 S.W. 835; Schroeder v. Rosenbaum, Tex. Civ.App., 21 S.W.2d 694; and Harry v. Hamilton, Tex.Civ.App., 154 S.W. 637, cited by the appellant are distinguishable from the instant case in that in each of those cases the land sought to be conveyed by the deeds was pointed out on the ground by the grantors and each party to the deeds had agreed on the identical land that was to be conveyed. The cross-plaintiff having failed to meet the burden resting upon it to show the essentials necessary for a reformation of the deeds in question, the trial court did not err in withdrawing that issue from the jury and rendering judgment thereon.

■ On the issue of limitation, C. S. Cobb, who was a cotenant with the plaintiffs in the 6.29-acre tract, never identified the land he claimed under the plea of 10 years' limitation. A contradiction of any adverse claim he might have asserted was made when he testified that "he had money to pay for it but never could get title to the land." Too, W. W. Cain testified that C. S. Cobb asked him to sign a ratification lease in favor of the Texas Company on the 6.29 acres of land, which was not denied by Cobb. An adverse claim to this tract by C. S. Cobb, tacked to that of J. O. Cobb, was necessary to mature title by limitation to that particular tract. Under the circum-

stances, we do not think the issue of limitation was raised by the evidence, and therefore overrule this point presented by the appellant.

In our opinion, there being no errors presented sufficient for reversal of this cause, the judgment of the trial court is in all things affirmed.