Frank A. LIDDELL et al., Appellants,

v.

T. M. SMITH et al., Appellees.

No. 13689.

Court of Civil Appeals of Texas.

Houston.

Oct. 19, 1961.

Rehearing Denied Nov. 30, 1961.

**336**

Liddell, Austin, Dawson & Huggins, Charles R. Vickery, Jr., Houston, for appellant.

Davis, Kee & Thomas, Cleveland Davis, Leland B. Kee, Wiley Thomas, Angleton, for appellee T. M. Smith.

BELL, Chief Justice.

Appellants are Frank A. Liddell and the National Bank of Commerce of Houston. Appellees are T. M. Smith and the Humble Oil and Refining Company. The Humble Company is really a stakeholder but is an appellee because judgment went against it. in favor of T. M. Smith as to certain accrued royalties and thus against appellants as to such royalties. This case originated in a trespass-to-try title suit filed June 19, 1956, by appellants in which they sought to establish ownership to one-fourth of the one-eighth royalty created in a lease to the Humble Company insofar as it covered approximately 71 acres of land in the McNeel Survey and the Gray and Moore Survey in Brazoria County. The lease covered a total of some 1,600 acres of land and an amendment added some 200 acres so that the lease as amended covered over 1,800 acres. The dispute, however, involves only 71 acres of the land, which, apart from the controversy here involved, was owned by T. M. Smith. T. M. Smith by way of answer and cross-action sought reformation of certain instruments contending the 71 acres had been included in the instruments sought to be reformed as a result of mutual mistake. Also appellee pled estoppel by deed against appellants.

The trial court, after trial to a jury, rendered judgment for appellee, T. M. Smith, partially on the jury verdict after disregarding certain answers of the jury, and partially on his holding of estoppel as a matter of law. The jury verdict found mutual mistake. The judgment also ran against the Humble Company in favor of appellee Smith for royalties which had accrued, which had been held in suspense pending a settlement of this controversy.

In 1933 appellee Smith was indebted to four banks. On August 30, 1933, he executed a mineral deed to H. B. Finch, Trustee, by which he conveyed a one-fourth mineral interest in numerous tracts of land, including approximately 152 acres in the above-named surveys. Actually, at the time he owned 223 acres in these surveys but some acreage was omitted. The mineral deed reserved to the grantor the executive rights. It provided the conveyance was subject to any existing oil and gas lease but included to the grantee one-fourth of the royalty of any existing lease. In fact there was no existing lease. It further provided that the grantee would be entitled to one-fourth of the bonus, delay rentals and royalty payable under any future lease and that in any such lease the grantor should reserve a royalty of at least one-eighth. Smith reserved the right for five years to repurchase the mineral interest.

The next day, August 31, 1933, H. B. Finch, Trustee, executed a Declaration of Trust, by which he referred to the above *mineral* deed and declared he held the mineral interest as trustee for the four banks named by him and agreed to use any money realized from the sale or lease of the minerals for the payment of the debts to the banks. This is the opening paragraph of the Declaration of Trust:

"Whereas, by deed dated August 30, 1933, T. M. Smith conveyed to me as Trustee an undivided one-fourth *mineral* interest in certain lands in Brazoria County, Texas, fully described and being that land set apart as *Suspense Award No. 1 and Suspense Award No. 2* in Cause No. 26,331, in the District Court of Brazoria County, Texas, styled J. R. Smith et al vs. T. L. Smith, Jr., et al and awarded by the District Court of Brazoria County, Texas, in Cause No. 26,331 A to T. M. Smith and is briefly described as follows: * * *." (Emphasis supplied.)

Then follows a list of surveys out of which the land conveyed is taken with the number

of acres supposedly included in the mineral deed from those surveys. In this a total of 201.9 acres are stated to be in the McNeel and Gray and Moore Surveys. There is no further description of the land in the Declaration of Trust. However by referring to the judgment awarding Suspense Awards Nos. 1 and 2 to T. M. Smith (actually the decree awards it to T. L. Smith, Jr., who subsequently conveyed to T. M. Smith, in accordance with the will of the father, T. L. Smith, which provided T. M. Smith's bequest was for the benefit of his family until he freed himself from debt), we find the acreage set out in such awards in these surveys to be 223.585. There were numerous other tracts from various other surveys included in the two suspense awards but they are not involved in this controversy.

On December 23, 1933, T. M. Smith and his brothers and sisters and other persons owning land in the two named surveys executed an oil and gas lease to the Humble Oil and Refining Company providing for the requisite royalty of one-eighth. Finch signed and acknowledged the lease, and by the last paragraph thereof agreed to all of its terms and provisions. He is not named as a lessor as he had no executive rights. It was necessary for him to sign because of the pooling of the minerals with those belonging to other owners. In the lease is this recital:

"Since, however, T. M. Smith, under date of August 30, 1933, conveyed to H. B. Finch, Trustee, one-fourth (1/4) of all *minerals* (emphasis ours) owned by him under the land covered by this lease [said conveyance being of record in Volume 642 (should be 242) at pages 613, et seq. of the Deed Records of Brazoria County, Texas], lessee is hereby especially directed to pay to H. B. Finch, Trustee, one-fourth (1/4) of all royalties apportioned above herein to T. M. Smith * * *."

This lease covered about 600 acres in the McNeel Survey and about 1,245 in the Gray and Moore Survey. It covered all land owned by T. M. Smith which amounted in the aggregate to 223 acres. (We use round figures in giving acreage and do not use a fraction of an acre.)

Thereafter, on February 15, 1938, an amendment was executed to the lease so as to add the acreage of the minor, E. P. Womack, Jr. This amendment made reference to the original lease for all purposes. There were other provisions made not material to our purposes except the one now noticed. Numbered Paragraph 5 of the amendment provided:

"It is further agreed and specified that the royalties payable under said lease dated December 23, 1933 as amended by this instrument on all production from said pooled acreage shall be as follows, towit:

\*     \*     \*     \*     \*     \*

"T. M. Smith 31304/422160 of 1/8
"P. C. Rehrauer, Trustee 15652/422160 of 1/8."

We have left out the fractions specified for other parties to the amendment because not material. Mr. Rehrauer had succeeded Mr. Finch as trustee on the latter's death. The fraction thus set aside to Rehrauer amounts not to one-fourth of Smith's royalty but to one-third thereof. The amendment was signed by Smith, Rehrauer and others.

Apparently it was discovered that the fractional royalty set aside to Rehrauer in the amendment was more than a one-fourth of Smith's royalty on his lands covered by said lease because on July 14, 1938, P. C. Rehrauer, Trustee, and Mrs. Pugsley, a sister of Mr. Smith's who was getting one-fourth of his royalty to pay on his debt to her, executed a correction deed by which they conveyed to T. M. Smith the royalties set aside to them in the lease amendment over and above 11739/422160 of 1/8. This last fraction represents one-fourth of Smith's royalty on the 223 acres owned by him covered by the lease, and amendment, to Humble Oil and Refining Company. The

correction deed refers to the original lease and its record for all purposes. It refers to the amendment and then recites that through error the *amendment* provided for the royalties payable to Rehrauer and Smith in the fractions above shown in our quotation from the amendment. It is then expressly stated that it was intended that the royalties should be divided so as to give Smith 35217/422160 of ⅛ and to give Rehrauer 11739/422160. Then followed the expression of a desire to correct the error. Then followed the conveyance by Rehrauer and Mrs. Pugsley to Smith of all above 11739/422160 which is kept by each.

This correction deed was apparently never personally delivered to Smith or his agent, but was delivered to the Humble Company, recorded by their representative in the Deed Records of Brazoria County, and then returned to the Humble Company. However, Smith thereafter received and accepted royalty payments on the basis last provided and signed division orders specifying such fractional division. Too, the jury found Smith accepted the deed and no attack is made on such finding.

Payments of royalties on the basis set up in the correction deed were made and accepted by all interested parties until January, 1955. The Humble Company in 1955 started paying Smith all of his one-eighth royalty on the 71 acres omitted from the Finch deed and continued until appellants filed this suit, at which time payments were suspended.

It should be especially noted that the *mineral fee* is not in controversy. The controversy involves one-fourth of the one-eighth royalty under 71 acres, the royalty being created by the Humble lease.

■ The rule is well established that a written instrument may be reformed on ground of mistake only if the mistake is mutual. It may not be reformed because of a unilateral mistake. Sun Oil Company v. Bennett, Tex.Com.App., 125 Tex. 540, 84 S.W.2d 447; Texas Company v. Cain, Tex. Civ.App., 177 S.W.2d 251, writ ref. The

party seeking reformation has the burden of proving that there was an agreement reached between him and the other parties to the subsequent written agreement and must show precisely what that agreement was and that a different agreement appearing in the written instrument was placed there through the mutual mistake of the parties. Too, that any such agreement continued to the time of the execution of the written contract.

■ There is an absence of evidence in this case to show that there was any agreement between the parties to the Humble lease and the correction deed of July 14, 1938, that Mr. Finch or Mr. Rehrauer, as Trustees, were to receive any royalty other than a one-fourth of one-eighth on all of Mr. Smith's land covered by said lease, as provided therein, or 11739/422160 of ⅛ as provided in the correction deed. While mutual mistake may be shown by circumstances, we think the circumstances shown here raise no fact issue as to the existence of an agreement other than as evidenced by the lease and correction deed.

· We have very carefully read the testimony of Mr. Smith and at no place in it does he state that he entered into an agreement with Mr. Finch, the original trustee, or anyone acting for him, that the trustee was to receive royalties on only 152 acres. In fact, he never had any conversation with Mr. Finch when the mineral deed was executed. The arrangement for the mineral deed, upon which Mr. Smith relies to establish a mistake in the lease and correction deed, was made between his attorney, Mr. Carlos Masterson, and the banks' attorney, Mr. Joe Andrews. Mr. Andrews, Mr. Masterson and Mr. Finch are all deceased. Mr. Smith says he merely signed the deed. Actually, the only thing Mr. Smith relies on to show mistake is that the mineral deed covered only 152 acres, which he did not discover until many years after the Humble lease and the correction deed. We think it of great significance that nowhere does Mr. Smith testify that there was an agreement to convey the minerals under only

152 acres. Since we discuss this deed so much, we hasten to add that the appellants do not here seek to claim the *royalty* in controversy under that deed, but claim under the correction royalty deed. However, the discussion of facts in connection with the deed is necessary because Mr. Smith seeks to establish mistake in the subsequent instruments. His position is that appellants' only right to royalty is through the mineral deed and since it conveyed an interest in only 152 acres, when the subsequent Humble lease and correction deed provided a one-fourth of the royalty to the Trustee under 223 acres it was a mistake because the parties intend only to get royalty under the land described in the *mineral* deed as evidenced solely by the *mineral* deed.

On the issue of Mr. Finch's intention, we have evidence given by the Declaration of Trust executed by Mr. Finch on August 31, 1933, the day after the mineral deed. In it he shows the intention to receive a one-fourth interest under Suspense Awards Nos. 1 and 2 awarded to Mr. Smith in the District Court's judgment, as above shown. While the brief statement of the specified acreage shows only 201.9 acres, this statement is shown by the instrument itself not to be controlling, but it was specifically stated the lands conveyed to and held by Mr. Finch as Trustee were said Suspense Awards Nos. 1 and 2. A reference to the judgment shows Suspense Awards Nos. 1 and 2 contain 223 acres in the McNeel and Gray and Moore Surveys. This simultaneous instrument repels the existence of a mutual agreement to receive an interest in only 152 acres. This is particularly true when Mr. Smith's testimony shows he talked to no one about the matter and he testified to no particular agreement with Mr. Finch. Too, it appears that either Mr. Smith or his attorney had the Declaration of Trust in his possession. They later asked Mr. Rehrauer to sign a declaration of the same nature. In addition to all of this, for some 16 years Mr. Smith received royalty payments made in pursuance of division orders

executed by him on a basis of his receiving credit for three-fourths of the royalty under 223 acres and the Trustee receiving one-fourth of the royalty under 223 acres. All of this, we think, completely destroys any assertion that there was an agreement reached between the parties that the Trustee was to receive an interest under only 152 acres.

We then reach the correction deed of July 14, 1938, which corrected the mistake made in the amended lease of February, 1938 by fixing the royalty in the Trustee in a fraction that amounted to one-third. In this correction deed the fraction of 11739/422160 was fixed in the Trustee and this represents one-fourth of the royalty under 223 acres. Mr. Smith and Mr. Rehrauer both testified they had no discussion of the matter and no agreement. Mr. Andrews, attorney for the banks, presented the matter to Mr. Rehrauer for signature. On the face of the instrument, however, the intention is apparent to change the Trustee's royalty from one-third to one-fourth under the 223 acres, not just under 152 acres. In any event, there is no evidence to show any agreement between the parties different from that expressed in the royalty deed. Mr. Rehrauer's testimony does not, in our opinion, as contended by appellee, show any different agreement. It only reflects that Mr. Rehrauer in his dealings with the various instruments did not intend to get or convey more than he was entitled to or more than he had. He never made nor knew of any specific agreement contrary to that reflected by the correction deed. He intended what was shown in such deed.

We, therefore, hold there was no evidence supporting the jury answers in effect holding there was mutual mistake in the correction deed fixing appellants' royalty at 11739/422160 of ⅛, and on appellants' motion these answers should have been disregarded.

■ Alternatively, appellants assert there is no clear and convincing evidence of mutual mistake in making the correction

deed. Of course the rule is that mutual mistake must be established by clear and convincing evidence. Where, however, there is some evidence of probative value, even though it be not clear and convincing, a jury issue is raised. The court must submit the issue to the jury and may not disregard the jury answers to the submitted issues. However, if the trial court, or the Court of Civil Appeals, concludes there is not clear and convincing evidence they may grant new trials based on the verdict in this respect being contrary to the overwhelming weight and preponderance of the evidence. Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206.

In this case we do not recede from our conclusion that there was no evidence to support the jury's finding of mutual mistake because there was no evidence of any agreement contrary to that expressed in the correction deed. If, however, we be mistaken in that conclusion, we hold that the answers of the jury finding such agreement are not supported by clear and convincing evidence and such answers are therefore so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

Also supporting the judgment of the trial court is his holding that as a matter of law appellants are estopped to claim more than one-fourth of one-eighth royalty under the 152 acres covered by the deed from Mr. Smith to Mr. Finch. The basis of this contention is that in March, 1941, Rehrauer as Trustee conveyed what Mr. Finch got in the deed from Mr. Smith to appellants or those under whom they hold, and such deed contained recitals that the interest shown by said deed to be in the grantees was correct. The trust termination deed is the instrument by which the trustee conveyed the legal mineral estate to the beneficiaries. Mr. Smith had given up his right to repurchase the minerals. Too, though the Court's judgment is not expressly based on estoppel because of the deed from the National Bank of Commerce to Mr. Liddell and the deed from

D. H. Austin to Mr. Liddell, appellees say that such a finding by the court would find support in the evidence and therefore it will be presumed that the court found such in a manner so as to support the judgment.

Appellants urge there is no estoppel because there is no inconsistency between the termination deed, which conveyed a *mineral* estate under 152 acres, and the royalty correction deed conveying 11739/422160 of ⅛ of 1800 + acres. Too, they say the deed to Finch is not in their chain of title insofar as the *royalty* involved in this suit is concerned.

■ We have reached the conclusion that the termination deed of March 14, 1941, from P. C. Rehrauer, Trustee, to the National Bank of Commerce, and to D. H. Austin, the predecessor in title to Frank A. Liddell, affords no basis for estoppel against appellants as to the *royalty* interest claimed in this suit.

■ The royalty interest here involved was not created by the deed from Smith to Finch. The deed from Smith to Finch conveyed a one-fourth interest in the *minerals*. The royalty interest involved was created in the Humble lease. It gave the Trustee a ¼ of ⅛ royalty under all the land covered by the lease. This included the 223 acres owned by Smith. When the Smith acreage was pooled, then all of the owners of land covered by the lease became owners of a royalty interest in all the lands in the proportion their acreage bore to the whole. This gave Finch 11739/422160 of ⅛ though in the lease the royalty interest was not expressed in this fraction. The deed from Smith could have created a royalty estate but it did not. A royalty of ¼ of the ⅛ that should be reserved in any lease would, as a legal result of the ownership of one-fourth of the minerals by Finch, go to him. However, no royalty estate, which is a different estate from the mineral estate, was created by the Finch deed. The royalty estate was created by the Humble lease and by agreement of the

parties was fixed at ¼ of ⅛ of all of the lands of Mr. Smith covered by the lease. While normally the royalty interest will be in the proportion of the mineral ownership, there is nothing to prevent the parties from contracting for a mineral interest in one amount and a royalty interest in a different amount. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166. After the royalty estate was created by the lease, the amended lease incorrectly fixed the royalty at one-third by fixing a fraction that amounted to one-third of Smith's interest. This was later corrected. Then the royalty fraction of 11739/422160 of ⅛ was finally fixed in the Trustee. This is the final act between the parties as to the royalty. This royalty deed, which the jury found Smith accepted, and which stands unreformed because, as we have held, there is no evidence to show mutual mistake, now stands effective. The deed from Rehrauer to the National Bank of Commerce and Mr. Liddell's predecessor in title was not a royalty deed. It was purely a mineral deed. It is not in appellants' chain of title to his royalty interest. As to his royalty interest appellants' chain of title is the Humble lease, the correction royalty deed, transfer order from Rehrauer, Trustee, to National Bank of Commerce and D. H. Austin, dated May 1, 1941, transfer order from D. H. Austin to F. A. Liddell dated September 1, 1942, transfer order from National Bank of Commerce to Frank A. Liddell dated September 1, 1942 and the royalty deed dated March 31, 1958 from Rehrauer, Trustee, to appellants. These instruments all dealt only with the royalty interest and estate. Appellants need go no other place or rely on any other instrument to establish their royalty interest.

Neither are there recitals in the trust termination deed which estop appellants.

■ Recitals in a deed to work an estoppel must be inconsistent with the position being taken by a party. 31 C.J.S. Estoppel § 38, p. 215. The trust termination deed, as we have noticed, dealt only with the distribution of the mineral estate created by the Finch deed. The agreement by appellants as grantees therein as to the correctness of the recitals therein, which included a recital of the percentage of ownership stated therein to be in the grantees, related to the *mineral* interest under the Finch deed under 152 acres. Appellants' interest here involved is purely a *royalty* interest under some 1,800 acres of land which includes 223 acres of land belonging to Mr. Smith. See MacDonald v. Sanders, Tex.Civ.App., 207 S.W.2d 155, ref., n. r. e.

We find nothing in the deeds from Austin and the National Bank of Commerce to Mr. Liddell that is so materially different as to estop Mr. Liddell.

In the light of our holding, it is unnecessary to discuss the question of limitation.

We have read all authorities cited and where not here cited we deem them inapplicable factually to the case before us.

■ While a holding that an answer by the jury is contrary to the overwhelming weight and preponderance of the evidence would only require a reversal and remand of the case for retrial, since we are convinced there is no evidence of probative value on the issue of mutual mistake and also that there is no estoppel against appellants, we will reverse and remand the case, with directions to the Trial Court to render judgment for appellants.

The judgment of the Trial Court is reversed and remanded and the Trial Court is directed to render judgment for appellants giving them recovery of a royalty interest payable under the Humble lease as amended of 11739/422160 of ⅛, together with judgment against the Humble Oil and Refining Company for accrued royalties up to the date of judgment in the amount as calculated by the Trial Court, with interest thereon from the date of judgment until paid.

Reversed and remanded, with instructions.