T. M. SMITH, Petitioner,

v.

Frank A. LIDDELL et al., Respondent.

No. A–8794.

Supreme Court of Texas.

May 1, 1963.

Rehearing Denied May 29, 1963.

Davis, Kee & Thomas, Angleton, for petitioner.

Liddell, Austin, Dawson & Huggins, Charles R. Vickery, Jr., Walter Morgan, Houston, for respondent.

SMITH, Justice.

On June 19, 1956, the respondents, Frank A. Liddell and The National Bank of Commerce, filed this suit against the petitioner, T. M. Smith and the Humble Oil and Refining Company, seeking to establish ownership of royalty in certain lands situated in Brazoria County, Texas.

The case was tried by the court before a jury, and special issues were submitted. The court received the verdict of the jury, but found that the jury findings were of no legal significance. Judgment was rendered for Smith. The Court of Civil Appeals reversed said judgment, and the case was remanded to the trial court with instructions to render judgment for Liddell. Tex.Civ. App., 351 S.W.2d 335. Throughout this opinion we designate the petitioner as Smith and the respondents as Liddell. The issues to be decided are drawn between Liddell and Smith. Humble is not an adversary party to this appeal.

The pertinent facts are these: On August 30, 1933, Smith owned undivided interests in many tracts of land located in numerous surveys in Brazoria and Matagorda County, Texas. Two of these tracts are involved in this law suit. One is a tract of 152.11 acres and the other is a tract of 71.446 acres. These tracts, as shown below, were later included in an oil and gas lease to Humble. On the date last above mentioned, Smith was indebted to several banks, including the respondent, The National Bank of Commerce. In order to secure the payment of his indebtedness to his creditors, Smith conveyed an undivided ¼ interest in and to the oil, gas and other minerals in some of the tracts he owned to H. B. Finch, trustee. Included in this conveyance from Smith to Finch was an undivided ¼ interest in the 152.11 acres, but such conveyance did not describe or convey any interest in the 71.446 acres out of the Daniel McNeel and Gray and Moore surveys situated in Brazoria County. In this trust deed Smith expressly reserved all executive rights. The trust was ter-minated as evidenced by a written termination agreement dated March 14, 1941, between P. C. Rehrauer, successor trustee, to H. B. Finch and Smith. The trust deed and the termination agreement were introduced in evidence.

On December 30, 1933, Smith joined with various of his relatives, who owned undivided interests in the Daniel McNeel and Gray and Moore surveys, in the execution of the Humble lease. This lease covered and included 1845.5 acres. Out of the 1845.5 acres, the lessors owned 1604.875 acres of which the 71.446 acres as well as the tract of 152.11 acres described in the Finch deed are a part.

Many of the issues that were considered to be controlling in the trial court and in the Court of Civil Appeals now become immaterial in view of the disposition we make of the case. Our decision determines the basic question which has been within the framework of the contentions of the parties from the date of the filing of Liddell's first amended original petition in this case. Prior to the filing of this amended original petition Liddell had sought a reformation of the trust deed to Finch on the theory that the 71.446 acres was not described and included within the terms of the trust deed because of mutual mistake.

The pleadings upon which the case proceeded to trial abandoned the reformation theory; and, as stated by Liddell in his brief in the Court of Civil Appeals, it was asserted that Liddell sought to establish his "title to the Humble Lease royalty created by an oil and gas lease from appellee [Smith] and others to Humble dated December 23, 1933; the lessors owned and leased only 1604.875 acres out of the 1845.5 acres described by metes and bounds in the lease. In this suit, appellants [Liddell] placed in issue only royalty under the Humble Lease, and appellants [Liddell] do not seek to recover the mineral fee as distinguished from this specific Humble Lease royalty."

Liddell contends that the disputed royalty was created by the execution and delivery

of the Humble lease, and that this royalty relates solely to the lease and will terminate when the lease terminates. The provision of the Humble Lease, upon which Liddell must rely, reads as follows:

> "*Since,* however, *T. M. Smith,* under date of August 30th, 1933, *conveyed to H. B. Finch, Trustee, one-fourth (¼) of all the minerals owned by him under the land covered by this lease, * * * lessee is hereby especially directed by the said T. M. Smith to pay to the said H. B. Finch, Trustee, one-fourth (¼) of all royalties apportioned above herein to the said T. M. Smith and one-fourth (¼) of all delay rentals due the said T. M. Smith,* subject to a possible repurchase of said mineral interest by the said T. M. Smith under the option given in said deed of conveyance to repurchase same within (5) years * * *."* (Emphasis added)

Liddell contends that this is a contractual provision that H. B. Finch, trustee, shall receive ¼ of all royalties, rentals and bonuses apportioned to T. M. Smith and attributable to his interest in the 1604.875 acres.

Liddell further contends that a "Lease Amendment" dated February 15, 1938, and describing the same 1845.5 acres that are described in the original Humble lease is an express agreement for a division of royalties. This contention is based on the language of the following clause in the "Lease Amendment" which was not contained in the original lease:

> "5. It is further agreed and specified that the royalties payable under said lease dated December 23, 1933, as amended by this instrument on all production from said pooled acreage shall be as follows, to-wit: * * *

> "T. M. Smith — 31304/422160 of 1/8
> "P. C. Rehrauer, Trustee — 15652/422160 of 1/8

---

provided, however, 15652/422160 of ⅛ out of the royalties allotted to T. M. Smith shall be paid to Ethel Pugsley * * *."

Liddell further contends that a "Correction Deed" dated July 14, 1938, executed and delivered by P. C. Rehrauer, successor trustee, Ethel Pugsley and her husband, Cornelius Pugsley, to Smith was, in effect, a partition agreement allocating ¼ of 45956/422160 (11739/422160) to Rehrauer, successor trustee, and ¾ of 45956/422160 (35217/422160) to Liddell.

Liddell asserts that his claimed percentage of Rehrauer royalty has been established not only through the oil and gas lease, the lease amendment and the correction deed, but in addition thereto, through certain transfer orders executed in May, 1941, and September, 1942, and also through a royalty deed, dated March 31, 1958, executed by Reh-

rauer, trustee, to The National Bank of Commerce and Frank A. Liddell.

In the trial of this case Smith sought reformation of the "Correction Deed" on the ground of mutual mistake; and, alternatively, Smith pleaded that Liddell was estopped, as a matter of law, to enforce such agreement. The issues of mutual mistake and estoppel are two of the issues which are unnecessary for us to decide. In other words, it is unnecessary for us to decide whether or not the royalty agreement contained in the "Correction Deed" should have allotted to Rehrauer only "¼ of the royalties produced from 152.11 acres out of the Humble lease land rather than 11739/422160 of ⅛ of production."

The question we have to decide is not, as claimed by Liddell, whether Smith is entitled to reduce the royalty provision of the "Correction Deed" from 11739/422160 of

⅛ to ¼ of ⅛ of the oil and gas produced by Humble from 152.11 acres. The question thus stated assumes that the terms of the instruments upon which Liddell relies control and establish his title; and that for Smith to prevail, he must secure a reformation of these instruments. In our opinion the question is whether Liddell has established that the terms of the Humble Lease, the Lease Amendment and the Correction Deed constitute a contractual agreement between Smith and Finch and his successor trustees which entitles Liddell, as the owner, to receive royalty payments based on all the acreage owned by Smith and leased to Humble on December 30, 1933.

Liddell contends that the rule announced in Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, is determinative of the question to be decided in the present case. In that case this court was called upon to construe a paragraph in a deed from Clarence Scharbauer, Sr. et ux. to A. H. Benge. The deed, except for a reservation of an interest in the minerals and a provision as to the grantee's power to execute leases and for payment of bonuses, rentals and royalties under such leases, was an ordinary general warranty deed. It purported to convey to the grantee several sections of land with reservations to the grantors of an undivided ⅜ths interest in the oil, gas and other minerals, and gave to the grantee and his assigns sole power to execute all future oil, gas and other mineral leases without joinder of the grantors, "but said leases shall provide for the payment of three-eighths (⅜ths) of all bonuses, rentals, and royalties to the grantors." The deed contained a general warranty of title to the premises described. At the time of this warranty the grantors did not own the entire mineral interest in the land, since there was an outstanding mineral interest in third parties of ¼th which was not mentioned in the deed.

This court held that the Benge deed was not ambiguous, and "must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument." The Court recognized certain well-settled rules which govern in construing unambiguous deeds. Using such rules as a guide, the Court stated that normally the fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease is the same as his fractional mineral interest, but that the parties owning the mineral interest may contract to make "it different if they intend to do so, and plainly and in a formal way express that intention." The Court held that the provision was not an agreement that the parties to the deed should participate in the bonuses, rentals and royalties in proportion to their ownership of mineral interests, but was rather a contractual provision that the grantors were to receive a "specified part of the bonuses, rentals and royalties; namely, ⅜ths." In that case it was pointed out that an instrument "may convey two separate estates in the minerals, one of which may be a full mineral interest and the other a royalty, or other interest in the minerals," and that a "grantor may reserve unto himself mineral rights, and he may also reserve royalties, bonuses and rentals—either one, more or all," citing authorities for all of these rules.

In the present case we have for construction the Humble lease which is unambiguous. Therefore, as in the Benge case, this court must give to the instrument the legal effect resulting from a construction of the language contained within the four corners of the instrument. In construing this lease, we must give effect to all parts of such instrument if possible to do so without violating any legal principles. It is only where the writing, on its face, is ambiguous, as where the language used is subject to two or more interpretations, that extrinsic evidence may be used. In the interpretation of contracts, whether they be ambiguous or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain and give effect to the true intention of the parties, see Universal C. I. T. Credit Corporation v. Daniel, 150 Tex. 513, 243 S.W.2d 154. It is the general rule of the law of contracts that

where an unambiguous writing has been entered into between the parties, the courts, in construing that writing will give effect to the intention of the parties as expressed or apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. See Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, 620; Ohio Oil Company v. Smith, Tex., 365 S.W.2d 621, 627; Williston on Contracts, § 610.

■ Applying these rules of construction to the Humble lease, it is clear that Smith was under no obligation to direct Humble to pay to Finch, trustee, a ¼th of all royalties apportioned to him in the oil and gas lease. The trust deed was made a part of the oil and gas lease and its contents are to be considered in determining the intention of the parties just as though it had been fully incorporated in the oil and gas lease. Had Smith conveyed to Finch a ¼ interest of all minerals owned by him under the lands described in the lease, then Smith would have been under a contractual obligation to see that Finch and his successors were paid ¼th of ⅛th of all the production. However, the fact remains that Smith conveyed to Finch a ¼th mineral interest in a tract of 152.11 acres and did not convey a mineral interest in 1604.875 acres. The Humble lease neither created nor extended the rights of Finch. The Humble lease was not a contract by which Finch, the original trustee, acquired any interest. The trust deed is the sole repository of the rights Liddell has, as a successor to Finch, in the royalty due Smith under the terms of the Humble lease. The trust deed obligated Smith, the holder of the executive rights, to stipulate in any oil and gas lease thereafter executed that Finch be paid ¼th of the bonus, consideration, rental and royalty. Since, by the terms of the trust deed, Smith did not convey to Finch an interest in the 71.446 acres, we hold that he was under no obligation to direct Humble, the lessee, to pay to Finch ¼th of the royalty apportioned to Smith under the terms of the lease. The

direction to Humble to pay to Finch certain royalty is merely a division order. The "Correction Deed" and the "Lease Amendment" cannot in any sense be construed as a new contract. The "Correction Deed" states that its purpose was to correct an error in the fractional interest set out in the "Lease Amendment." Both of these instruments, it is true, stipulate that royalty payments shall be made to the lessors in certain specified proportions, but we hold that they do not partition or divide Smith's royalty estate, but rather they are merely directions to Humble to pay and do not convey to the present claimant, Liddell, an additional interest in the oil and gas. Likewise, the subsequent transfer orders were directed to Humble. These transfer orders contain no words of conveyance. They clearly have reference only to the oil and gas produced and not to a fractional interest in the oil and gas to be produced.

Thus, we are construing instruments which amount to no more than division orders. These instruments remained effective from 1938 to 1955, and royalties were paid to Liddell and Smith in accordance with the amounts specified in the "Correction Deed." Smith is in no position to recover any part of the royalties paid Liddell during the period from 1938 to 1955, and he makes no claim therefor. He was bound by the agreements contained in the "Correction Deed" and the transfer orders, even though incorrectly stated, so long as such orders remained in effect. The Chicago Corporation v. Wall, et al., 156 Tex. 217, 293 S.W.2d 844. Since Smith was under no contractual obligation to see that Liddell was paid ¼th of ⅛th of all production, he had the right to revoke and he did, in 1955, revoke his previous direction to pay. At the same time Smith directed Humble to pay to him all the royalties to which he was entitled under the terms of the Humble lease. We hold that Smith's revocation rendered ineffective his prior direction to pay royalties. See Hogg v. Magnolia Petroleum Company, Tex.Com.App. (1924), 267 S.W. 482; Stanolind Oil & Gas Com-

pany v. Terrell, Tex.Civ.App., 183 S.W.2d 743 (1944), wr. ref.; The Chicago Corporation v. Wall, et al., supra. Smith's direction to pay all royalty to him was honored by Humble until this suit was filed in 1956. Smith is entitled to all funds now held by Humble.

We come now to the judgment to be entered by this court. We have heretofore stated that Humble is not an adversary party to this suit. However, Humble filed an answer admitting that it has withheld royalty payments to Liddell and the bank since 1955, but stands ready and willing to make a final accounting to any party to this suit who shall ultimately establish title to the royalty payments withheld. Under our holding, the funds now held by Humble should be paid to Smith. Liddell is the owner of 29.85% mineral interest in one-fourth (¼) of the 152.11 acres, and The National Bank of Commerce is the owner of a 14.096% mineral interest in said ¼ of the 152.11 acres.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to the trial court with instructions to enter a judgment in accordance with this opinion.