NO. 07-10-00396-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 29, 2011

—————————

XTO ENERGY INC., APPELLANT

v.

BRYAN J. PENNEBAKER, RON G. CRABTREE
AND ANNE F. CRABTREE, APPELLEES

—————————

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY;

NO. 096-231886-08; HONORABLE JEFF WALKER, JUDGE

—————————

Before CAMPBELL and HANCOCK, JJ. and BOYD, S.J.[1]


**MEMORANDUM OPINION**

Appellant XTO Energy, Inc. and appellees, Bryan J. Pennebaker, Ron G. Crabtree, and Anne F. Crabtree (collectively, Pennebaker) filed various motions for summary judgment concerning their respective rights under an oil and gas lease. The trial court ultimately rendered a final judgment declaring the lease terminated and establishing the post-termination method for XTO to account to Pennebaker. XTO challenges the termination of the lease and urges rendition of judgment in its favor on

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

affirmative grounds denied by the trial court. Pennebaker asserts by cross-appeal the post-termination accounting method ordered by the trial court is erroneous.

Portions of the judgment are not challenged by XTO on appeal and will therefore be affirmed. Otherwise, finding neither Pennebaker nor XTO presented proof sufficient to prove conclusively their respective positions, we will reverse and remand.

Background

The lease here in question was executed September 9, 2004, by Pennebaker's predecessor in interest, American National Credit Corporation as lessor, and XTO's predecessor in interest Keystone Exploration, Ltd., as lessee.[2] According to the lease, the land subject to its terms comprised 33.591 acres, consisting of 23.591 acres, referred to as the "Described Lands" and an "estimated" 10 acres located under the streets, roads and highways adjoining the Described Lands, called the "Additional Lands." Pennebaker claimed it acquired an undivided interest in ten acres under the highway exchange pursuant to the strip and gore doctrine.

The lease contains a provision granting the lessor an option to terminate the agreement if royalties are not timely paid. Specifically, paragraph 3(F) provides in pertinent part:

> [I]f Lessee fails to timely pay royalty as herein required; then in addition to all other rights and remedies available to Lessor, Lessor shall, at its option, have the right to cancel and terminate this lease as to all of the lands covered hereby by filing an affidavit of record in Tarrant County,

---

[2] According to the February 19, 2009, affidavit of Thomas B. Blanton, CEO of Keystone, the lease was assigned by Keystone to XTO "over a year" earlier.

2

Texas reciting the non-payment of royalties; provided, however, Lessor shall give written notice to Lessee at the address set forth above of such intention to cancel and terminate this lease . . . .

During October 2005, Keystone filed two separate unit designations, establishing the Citcarp 1-H unit and the Citcarp 2-H unit. The Citcarp I-H Unit consists of approximately 175 acres including the Described Lands, and the Citcarp 2-H Unit contains approximately 120 acres including the Additional Lands. One producing well was drilled on the 1-H unit and two producing wells were completed on the 2-H unit.

In 2008, a dispute arose among Pennebaker and XTO. Pennebaker alleged XTO failed to pay royalties due from the 2-H unit and by a May 1, 2008, letter addressed "to whom it may concern" at XTO, declared the lease in default. A June 1, 2008, letter from Pennebaker "to whom it may concern" at XTO gave notice of intention to file an affidavit of non-payment. A letter to XTO, of July 22, 2008, from Pennebaker's attorney stated Pennebaker was "terminating the lease for non-payment of royalties," and intended to file an affidavit to that effect in the real property records of Tarrant County.

Pennebaker then filed the underlying suit against XTO. Their live pleading sought declaratory relief and asserted claims of trespass to try title, suit to quiet title, and conversion, and a claim for an accounting. In the request for declaratory relief, Pennebaker sought a declaration that the lease was "void and of no force and effect." XTO filed a counterclaim for declaratory relief. Among other things, it sought a declaration that "the lease remains in full force and effect and was not terminated."

3

As noted, the parties filed various motions for summary judgment. Pennebaker argued the lease contained an express condition subsequent authorizing its termination by the lessor if the lessee failed to timely make royalty payments. It requested summary judgment "declaring that the Lease terminated, that Plaintiffs are entitled to immediate possession of their interests in the Lease and quieting title to the minerals under the leased premises in Plaintiffs." After making interim summary judgment orders the trial court signed a final judgment on August 11, 2010. The decretal section of the judgment contains the declaration, "The Lease terminated according to Paragraph 3(F) of the Lease effective July 22, 2008." The judgment further orders that XTO account to Pennebaker by netting revenues and expenses on a unit basis. XTO appealed and by cross-appeal Pennebaker challenges the post-termination accounting method.

Analysis

We review the trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). A movant, on a traditional motion for summary judgment on affirmative claims, bears the initial burden of showing its entitlement to judgment as a matter of law by conclusively proving each element of its cause of action. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Only if the movant satisfies this burden does the burden shift to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Id.*

I. Appeal of XTO

A. Whether Pennebaker met the summary judgment burden.

4

XTO asserts Pennebaker failed to comply with the notice of termination requirements of the lease. In particular, it points out that the summary judgment record does not contain conclusive proof that Pennebaker filed an affidavit of record in Tarrant County "reciting the non-payment of royalties." As noted, the lease provides "if Lessee fails to timely pay royalty as herein required; then in addition to all other rights and remedies available to Lessor, Lessor shall, at its option, have the right to cancel and terminate this lease as to all of the lands covered hereby by filing an affidavit of record in Tarrant County, Texas reciting the non-payment of royalties[.]" In a footnote to their brief, Pennebaker responds that they were excused from filing the affidavit because to do so in the face of XTO's August 2008 expression that the lease had not terminated would risk liability for slander of title. Therefore, Pennebaker continues, they were instead authorized to seek a declaratory judgment declaring the rights of the parties under the lease.

"The promise to pay royalties is generally a covenant, which will give rise only to a remedy of damages in absence of a specific clause allowing the option of termination of the lease upon the lessee's failure to pay." *Vinson Minerals, Ltd. v. XTO Energy, Inc.,* 335 S.W.3d 344, 354 (Tex.App.--Fort Worth 2010, pet. denied) (footnote omitted). While not common in Texas, parties to a mineral lease may create an express condition subsequent allowing the lessor the option of terminating the lease in the event of the lessee's failure to pay royalty. *Coastal Oil & Gas Corp. v. Roberts,* 28 S.W.3d 759, 763 (Tex.App.--Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.) (citing Linton E. Barbee, *The Lessor's Remedies for Non-Payment of Royalty,* 45 Tex. L. Rev. 132, 159 (1966)). The grantor of an estate subject to a condition subsequent retains a power to

5

terminate the estate on the occurrence of a specified event. *Crowell v. Texas A&M Univ. Sys.,* No. 05-94-1510-CV, 1995 Tex. App. Lexis 3956, at *13 (Tex.App.--Dallas May 25, 1995, no writ) (not designated for publication). On the occurrence of the specified event, the estate continues until the grantor exercises its power of termination. *Id.* at *13-14. *See Saunders v. Alamo Soil Conversation Dist.,* 545 S.W.2d 249, 253 (Tex.Civ.App.--San Antonio 1976, writ ref'd n.r.e.) (noting condition subsequent creates right of entry or power of termination). The breach of a condition subsequent authorizes a forfeiture of the lease. *Stanolind Oil & Gas Co. v. Barnhill,* 107 S.W.2d 746, 748 (Tex.Civ.App.--Amarillo 1937, writ ref'd). Texas law disfavors a lease forfeiture provision and "if the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed." Jeffrey C. King, *Selected Re-Emerging and Emerging Trends in Oil and Gas Law as a Result of Production from Shale Formations,* 18 Tex. Wesleyan L. Rev. 1, 13 (2011) (quoting *Vinson Minerals,* 355 S.W.3d at 354). In other words, we will not declare a forfeiture unless compelled to do so by language incapable of another construction. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex. 1987).

Here perpetuation of the interest the lease created in the lessee was conditioned on its payment to the lessor of royalties. Should the lessee fail to timely do so, the lessor retained a power of termination to be exercised by filing an affidavit of non-payment in the records of Tarrant County.[3] While Pennebaker may have been wary of

---

[3] *Cf.* 3 Howard R. Williams & Charles J. Meyers, Oil and Gas Law § 656.2, at 699-700 (1998) (quoting "A lease form for University of Texas lands"):

a potential adverse consequence attending the exercise of this power, such was the agreement of the parties and neither the trial court nor this court may rewrite the lease to afford a different procedure. *See Hinton Prod. Co. v. Arcadia Exploration & Prod. Co.,* 261 S.W.3d 865, 871 (Tex.App.--Dallas 2008, no pet.) (noting courts cannot change parties' contract merely because they subsequently dislike its requirements and believe something else is needed). Rather, a court must apply lease clauses as written and may not imply terms not found within the four corners of the document. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732-33 (Tex. 1981); *Smith v. Liddell,* 367 S.W.2d 662, 665-66 (Tex. 1963).

It was Pennebaker's burden, as movant of a traditional motion for summary judgment on an affirmative claim, to conclusively prove the lease terminated on July 22, 2008. While the summary judgment record contains evidence indicating Pennebaker intended to file an affidavit of non-payment, the record lacks conclusive proof this was performed. Therefore, summary judgment on this ground was improper.

There is another reason we could not sustain the trial court's declaration the lease had terminated. In paragraph 3(F) of the lease, immediately after the sentence we have quoted providing for termination, is a sentence reading:

---

> If Lessee shall fail or refuse to make the payment of any sum due by the provisions of this lease, either as rental or royalty on the production, within thirty (30) days after same shall become due, ... this lease may be subject to forfeiture by the Board for lease of University Lands by an order entered upon the minutes of the Board reciting the facts constituting the default and declaring the forfeiture.

7

Lessor shall not have the right to cancel and terminate this lease as hereinabove provided (i) if payments of royalty are withheld by Lessee as a result of a requirement in a title opinion that places in issue Lessor's title to, or right to receive payments of, royalties accruing under this lease, which requirement has not been satisfied by Lessor after a reasonable request for curative information has been made by Lessee, or (ii) Lessor and Lessee have an unresolved *bona fide* dispute over the calculation of the amount of the royalty to be paid to Lessor.

XTO contends its failure to pay Pennebaker royalty attributable to the Additional Lands in the 2-H unit for the months in question in 2008 was excused under that provision. Pennebaker argues the provision does not apply because it was superseded by the terms of a June 2006 agreement. As noted, Texas law requires that we interpret agreements so as to prevent forfeitures if their terms are fairly susceptible to such an interpretation. *Vinson Minerals,* 355 S.W.3d at 354. Accordingly, based on the summary judgment record before us, we will not adopt Pennebaker's construction of the June 2006 agreement as superseding the quoted terms of paragraph 3(F) of the lease.

We agree with XTO that the summary judgment record contains evidence, including a 2005 title opinion, suggesting that royalties attributable to the Additional Lands could have been suspended as a result of the requirement in a title opinion casting doubt on Pennebaker's title to the Additional Lands. *But see Coastal,* 28 S.W.3d at 765-67 (finding similar provision did not authorize failure to pay royalty under facts there shown). We note also the evidence that Pennebaker was engaged in litigation with third parties over the ownership of those lands. Given the disfavor that forfeitures carry under our state's law, we agree that this evidence precluded summary judgment declaring the lease terminated.

8

For both these reasons, Pennebaker was not entitled to summary judgment. To the extent a remaining issue of XTO challenges the sufficiency of Pennebaker's summary judgment proof, its review is unnecessary. Tex. R. App. P. 47.1.

B. Affirmative Claims of XTO

XTO asserts we should reverse and render judgment that the lease remains valid and effective either because termination of the lease was precluded by the terms of paragraph 3(F) just discussed, by provisions of the Texas Natural Resources Code, or by division orders executed by Pennebaker, or because Pennebaker is estopped to claim termination of the lease. We find the trial court did not err by failing to enter summary judgment for XTO, on any of its theories.

*Justifiable Suspension of Royalty Payments*

*Lease Provision*

We have stated our agreement with XTO there is evidence its failure to pay Pennebaker royalty from the Additional Lands may have occurred "as a result" of the title opinion casting doubt on Pennebaker's title. But there also is evidence its failure to pay the royalty was not due to title requirements. The uncertainty of Pennebaker's title to the Additional Lands was known at the time of execution of the lease, and was addressed in the lease. The lease describes the Additional Lands as an "estimated" ten acres. It provides that until, by agreement or court judgment, the lessor is determined to own more, or less, than ten acres, royalty will be paid as though the Additional Lands consisted of ten acres. It further provides that if the lessor is determined to own more

9

than ten acres, the lessor will be paid additional bonus and royalty, or if determined to own fewer than ten acres, will refund the excess bonus and royalties to the lessee. There also is evidence that Pennebaker inquired of an XTO officer, by email, about the suspension of its unit 2-H royalty and was told, by email response, that XTO's division order department had been instructed to "take this 10 acres out of suspense." In a summary judgment affidavit, the XTO officer did not address the reasons for the suspension of the royalty but attributed the failure to resume its payment to inadvertence. XTO did not demonstrate as a matter of law that its failure to pay the royalty was excused by the terms of paragraph 3(F) of the lease.

*Natural Resources Code*

Natural Resources Code § 91.402(b) provides:

(b) Payments may be withheld without interest beyond the time limits set out in Subsection (a) of this section when there is:

(1) a dispute concerning title that would affect distribution of payments;

(2) a reasonable doubt that the payee:

(A) has sold or authorized the sale of its share of the oil or gas to the purchaser of such production; or

(B) has clear title to the interest in the proceeds of production;

(3) a requirement in a title opinion that places in issue the title, identity, or whereabouts of the payee and that has not been satisfied by the payee after a reasonable request for curative information has been made by the payor.

Tex. Nat. Res. Code Ann. § 91.402(b) (West 2011); *see Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d 451, 461 (Tex. 1998) (op. on reh'g) (applying statute).

10

Assuming that compliance with § 91.402(b) would have the effect XTO's argument posits, that of precluding termination of the lease under the terms of its paragraph 3(F), a question on which we express no opinion, we conclude the summary judgment record does not conclusively establish the applicability of § 91.402(b)(1), (2) or (3) to XTO's 2008 suspension of Pennebaker's unit 2-H royalty.

*Division Orders*

We reach the same conclusion with regard to XTO's contention that termination of the lease was precluded as a matter of law by the provision regarding disputed title contained in division orders signed by Pennebaker.[4]  Again assuming, without deciding, that compliance with the terms of the division order would have the effect of precluding termination of the lease, we find the summary judgment record does not conclusively establish a withholding of payments subject to that provision of the division order.

---

[4] Pennebaker signed division orders for the Citcarp 2-H unit.  Included in these agreements was the following paragraph:

> DISPUTE; WITHHOLDING OF FUNDS: If a suit is filed that affects the interest of the owner, written notice shall be given to payor by the owner together with a copy of the complaint or petition filed. In the event of a claim or dispute that affects title to the division of interest credited herein, payor is authorized to withhold payments accruing to such interest, without interest unless otherwise required by applicable statute, until the claim or dispute is settled.

*See* Tex. Nat. Res. Code Ann. § 91.402(c)(1)(D) (West 2011) (division order may contain provision authorizing suspension of production payment until resolution of title dispute).

11

*Estoppel*

XTO next asserts as a matter of law Pennebaker is estopped to assert termination of the lease because of its "deceitful conduct." It points to evidence that after XTO suspended Pennebaker's unit 2-H royalty payments, Pennebaker was in negotiation with particular XTO personnel concerning other matters involving the lease, including the drilling of an additional well. XTO argues Pennebaker remained silent during these conversations about its claim the lease was subject to termination. Rather than notify the XTO personnel with whom he was in contact, Pennebaker sent "to whom it may concern" correspondence to the revenue department. XTO also points to the terse nature of the correspondence, which it argues made it deceptive. It notes Pennebaker also failed to return a telephone call to XTO personnel who sought to clarify his correspondence.

Pennebaker counters that they notified the XTO officer by email of their complaint of suspended royalty, and sent their correspondence to the address given them when XTO acquired the lease. As noted, the XTO officer testified it was by "inadvertent error" that the royalty was not reinstated to pay status.

Generally, equitable estoppel arises from conduct causing another party to materially alter its position in reliance on that conduct. *Tuscany Realty, Ltd. v. Tuscany Gardens, L.P.,* No. 02-07-0421-CV, 2009 Tex. App. Lexis 9871, at *9 (Tex.App.--Fort Worth Dec. 10, 2009, pet. denied) (per curiam) (mem. op.). A party relying on the doctrine of estoppel must prove: (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the

12

intention that it should be acted on, (4) to a party without knowledge or a means of obtaining knowledge of the facts, (5) who detrimentally relies on the representation. *Id.* at *9-10. Estoppel ordinarily presents a question of fact for resolution by the trier of fact, although it may be proved as a matter of law by undisputed facts. *Jones v. Ray Ins. Agency,* 59 S.W.3d 739, 752 (Tex.App.--Corpus Christi 2001, pet. denied).

By seeking to prove Pennebaker was estopped as a matter of law from canceling the lease, it was for XTO to conclusively prove each element of estoppel. Because of evidence of conflicting material facts, the trial court rightly denied XTO's motion for summary judgment on its estoppel claim.

## II. Pennebaker's Cross-Appeal

By cross-appeal, Pennebaker asserts the trial court erred in ordering XTO account to Pennebaker from the date the lease terminated on a unit basis. Without expressing an opinion on its merits, we overrule this issue as its merit depends on an adjudication that the lease terminated.

## III. Attorney's Fees Claims of the Parties

XTO challenges the recovery by Pennebaker of their trial and appellate attorney's fees and seeks its own award of attorney's fees to be determined by the trial court on a limited remand.

At paragraph 7, the judgment awards Pennebaker reasonable and necessary attorney's fees "conditioned on the affirmance of this judgment by the highest court to which it is appealed[.]" While we affirm the trial court's judgment as to matters XTO

13

does not challenge on appeal, the fundamental dispute, the termination of the lease on July 22, 2008, remains unresolved and awaits determination by the trial court on remand. Pennebaker thus is not entitled to an award of attorney's fees.

XTO grounds its request for attorney's fees on language in the lease and Civil Practice and Remedies Code § 37.009. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). The provision of the lease in question specifies:

> 16. <u>Costs and Attorneys Fees</u>. If either party hereto files a legal action to enforce any express or implied obligation of this lease, the losing party shall reimburse the prevailing party for all of the prevailing party's costs of such legal proceeding including reasonable attorney's fees, if so ordered by the trial court hearing such dispute.

The effect of our decision is nothing more than denial of the parties' various summary judgment motions for want of sufficient proof. For the purpose of lease paragraph 16, there is, therefore, no "losing party" as disposition of the case must await proceedings following remand.

"In a proceeding under the [Uniform Declaratory Judgments Act], the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(a) & 37.009 (West 2008). XTO's request for attorney's fees under this section appears predicated on obtaining reversal and rendition. As that is not our judgment, we do not find the trial court abused its discretion by denying XTO an award of attorney's fees under § 37.009. *See, e.g., Hourani v. Katzen,* 305 S.W.3d 239, 257 (Tex.App.--Houston [1st Dist.] 2009, pet. denied) (noting review of award under § 37.009 is for abuse of discretion).

14

## Conclusion

In paragraph number 1 of the judgment, the trial court decrees that Pennebaker acquired an undivided interest in ten acres under the highway exchange according to the strip and gore doctrine. XTO does not appeal this portion of the judgment. At paragraph number 6, the judgment decrees Pennebaker was entitled to receive from XTO royalties on production occurring on or before July 22, 2008. This also is not challenged on appeal.

We accordingly affirm the judgment only as to its decrees at paragraphs number 1 and 6. Otherwise, the judgment is reversed and remanded for further proceedings.


James T. Campbell
Justice

15