COASTAL OIL & GAS CORPORA-
TION and Coastal Oil & Gas
USA, L.P., Appellants,

v.

Barry Coates ROBERTS and George L.
Stieren, Trustees of the Coates Energy
Trust, and Coates Energy Interests,
Ltd., Appellees.

No. 13–98–652–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 2000.

Rehearing Overruled Oct. 5, 2000.

760

Daniel C. Bitting, Elizabeth N. Miller, Scott, Douglass & McConnico, Austin, Gregory T. Perkes, Cohn, Casstevens and Bircher, Corpus Christi, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, Jose E. Chapa, Jr., Yzaguirre & Chapa, McAllen, Joseph Cohn, Jr., Wood, Burney, Cohn & Viles, Corpus Christi, for Appellants.

Francisco J. Rodriguez, Rodriguez, Pruneda, Tovar, Enriquez & Calvillo, McAllen, Luke C. Kellogg, San Antonio, Frank E. Weathered, Dunn & Weathered, Corpus Christi, Jacqueline L. Weaver, University of Houston Law Center, Houston, for Appellees.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

This is an appeal from a summary judgment terminating a gas lease for failure to pay royalties. By three issues, Coastal Oil & Gas Corporation and Coastal Oil & Gas USA, L.P. (Coastal)[1] contends the trial court erred in granting summary judgment and terminating the lease because there were fact issues as to whether it wrongfully or unreasonably withheld royalties after sufficient notice. We affirm.

Coates Energy Trusts and Coates Energy Interests, Ltd. (Coates) and Coastal executed several oil and gas leases in Hidalgo County in which Coates was a lessor and Coastal was a lessee. In 1992, the parties executed two gas leases designated leases "E" and "F." In 1993, Coates filed suit against Coastal, seeking damages for, *inter alia*, underpaid royalties on various leases. The suit did not initially involve leases E or F. The litigation proceeded with Coates amending their petition numerous times and Coastal filing several motions for summary judgment.

The instant appeal arises from termination of the F lease for failure to pay royalties. Payment of royalties under the F lease was expressly governed by paragraph three of the lease, which provided:

Royalties and other payments for production shall be due and owing to Lessor within 120 days from the date of first production, and thereafter such payments shall be due on or before the end of the second calendar month following the month in which the production for which the royalties or payments are to

---

1. We refer to Coastal and Coates in the singular for purposes of clarity, while recognizing they constitute multiple parties.

be made are sold and delivered. If Lessee wrongfully or unreasonably withholds any such payment or payments due to Lessor for a period of thirty (30) days after written demand for payment is made by Lessor on Lessee at the above address (or other such address as made by specified in writing hereafter by Lessee), at the election of Lessor this lease may be terminated.

As part of the F lease, Coastal drilled a well known as F–6, which began producing gas on November 19, 1997. On February 25, 1998, Coastal sent a letter and a division order to all interested owners of the F–6 well, with a statement that they would pay royalties upon receipt of the completed division order. Coates did not return the division order to Coastal.

Under the terms of the lease, royalties were due by March 19, 1998, which was 120 days from the date of first production. Coastal did not pay royalties on the F–6 well by March 19, 1998; consequently, Coates sent Coastal a written demand for payment on March 24, 1998. The demand stated:

> Plaintiffs hereby make demand for all royalties due and owing pursuant to each paragraph three of the (a.) Coates "E" lease and (b.) Coates "F" Lease. Plaintiffs demand payment in full from each separate defendant, their proportionate share of all amounts due. You have thirty (30) days, after receipt of this letter, to pay said amounts. We appreciate your immediate attention to these matters.

Coastal responded with a written letter on April 21, 1998, stating they had and would continue to pay royalties on the E and F leases. Coastal informed Coates that its written demand was "insufficient, deliberately vague and written in such a way as to keep [Coastal] ... from being able to adequately respond." According to Coastal, the written demand did not explain the amounts owed, how it had improperly calculated royalties, or how Coates wished such royalties to be calculated.

On May 4, 1998, Coates notified Coastal that they were terminating the F lease pursuant to the terms of the lease, as more than thirty days had elapsed since their written demand and Coates had not received royalties owed on the F lease. Coates filed its fifteenth amended petition in the suit originally filed in 1993, alleging that the F lease had terminated based on the failure to pay royalties on the F–6 well. Coates also filed a motion for summary judgment, seeking to terminate the F lease based upon Coastal's "wrongful or unreasonable" failure to pay royalties after written demand for payment. Coastal filed a counter-claim, asking the court for declaratory judgment that it was entitled to a signed division order before disbursing royalties to Coates. Coastal also filed a response to Coates's motion for summary judgment, as well as a cross-motion, contending its suspension of royalties was not wrongful or unreasonable and that Coates's written demand for payment was invalid. The trial court granted Coates's motion for summary judgment and terminated the F lease.[2] By agreement, the summary judgment terminating the F lease was severed and made final.

By its second issue, Coastal asserts the trial court erred in granting summary judgment and in denying its cross-motion for summary judgment because Coates failed to give proper notice of the unpaid royalties.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing

---

**2.** By granting summary judgment in favor of Coates, the trial court necessarily denied Coastal's cross-motion. *See* Tex.R.App. P. 33.1(a)(2)(A).

court will take as true all evidence favoring the non-movant. *See Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *See Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

■ Generally, an oil and gas lease can be terminated only if there is breach of a special limitation or a condition subsequent. *See* Linton E. Barbee, *The Lessor's Remedies for Non–Payment of Royalty,* 45 Tex. L. Rev. 132, 158 (1966). Breach of a covenant, in contrast, subjects a party to liability for damages, or in extraordinary cases, allows for a conditional decree of cancellation. *See Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 506 (Tex.App.-Waco 1997, pet. denied) (citing *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *Parten v. Cannon,* 829 S.W.2d 327, 329–30 (Tex.App.-Waco 1992, writ denied)). Non-payment of royalty will not typically terminate a lease, "in the absence of a specific clause to that effect." *Morriss v. First Nat. Bank of Mission,* 249 S.W.2d 269, 279 (Tex.Civ.App.-San Antonio 1952, writ ref'd n.r.e). However, parties may contractually provide for an express condition subsequent, which allows the lessor the option of terminating the lease upon the lessee's failure to pay royalty. *See* Linton E. Barbee, *The Lessor's Remedies for Non–Payment of Royalty,* 45 Tex. L. Rev. 132, 159 (1966). Here, the lease included an express condition subsequent that the lessor could terminate the lease if the lessee wrongfully or unreasonably withheld royalty payments for a period of thirty days after the lessor's written demand for payment. *See Hitzelberger,* 948 S.W.2d at 506 (construing a clause that provided, "[i]f said initial royalty payment is not so made under the terms hereof, this lease shall terminate[,]" as a special limitation or condition). Therefore, pursuant to the express terms of the lease, summary judg-

ment was proper and Coates was entitled to terminate the lease if: (1) Coastal failed to pay royalties on a timely basis; (2) Coates gave Coastal a written demand for payment; and (3) Coastal wrongfully or unreasonably withheld such payment for a period of thirty days following the demand.

■ The evidence is undisputed that Coastal did not pay royalties on the F–6 well. Coastal challenges that it received an adequate written demand and that it wrongfully or unreasonably withheld payment. Regarding the written demand, Coastal complains that Coates did not identify the performance necessary to avoid termination of the lease. As Coastal notes, the written demand letter did not refer to non-payment of royalties on the F–6 well, and the demand was not limited to the F lease. Instead, the letter demanded payment for all unpaid royalties on the E and F leases. Coastal also notes the written demand did not indicate that Coates had any problems with the form division order that Coastal had sent. Coastal contends that this generic demand was inadequate notice of non-payment of royalty and that it failed to provide an opportunity to cure the non-payment.

■ An oil and gas lease is a contract and must be interpreted as a contract. *See Hitzelberger,* 948 S.W.2d at 503 (citing *TSB Exco v. E.N. Smith, III Energy Corp.,* 818 S.W.2d 417, 421 (Tex.App.—Texarkana 1991, no writ)). As with any contract, the intent of the parties is controlling. *See Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727–28 (Tex. 1981). We must construe the oil and gas lease disfavoring forfeiture. *See Cambridge Oil Co. v. Huggins,* 765 S.W.2d 540, 542–43 (Tex.App.-Corpus Christi 1989, writ denied) (citing *Reilly v. Rangers Management Inc.,* 727 S.W.2d 527, 530 (Tex.1987)); *see also TSB Exco, Inc. v. E.N. Smith, III Energy Corp.,* 818 S.W.2d 417, 422 (Tex. App.-Texarkana 1991, no writ) (rule of construction that courts must construe lease against lessee does not apply when such construction would cause forfeiture).

According to Coastal, the written demand provision in the lease required Coates to give Coastal notice of the particulars of the default and an opportunity to cure. Coastal contends courts are strict in assessing the sufficiency of the notice given by lessors. However, the authority relied upon by the treatise cited by Coastal states, "[t]he authorities hold that the prerequisite of notice to forfeit contained in a lease must be literally complied with." *Deace v. Stribling*, 142 S.W.2d 564, 566 (Tex.Civ.App.-Austin 1940, no writ).

■ In this case, the lease required "written demand of payment," and did not require the lessor to explain the particulars of the breach. By sending Coastal a written demand for payment without spelling out the particulars of the default, Coates literally complied with the demand provision. Courts apply lease clauses as written and refuse to imply terms not found within the four corners of the document. *See Sun Oil Co.*, 626 S.W.2d at 732–33; *Smith v. Liddell*, 367 S.W.2d 662, 665–66 (Tex.1963). Because the lease stated that the lessor was required to give written demand, and did not require the lessor to specify how the lessee had defaulted, Coates's written demand complied with the terms of the lease.

Coastal also argues the notice was deficient based on the parties' dealings subsequent to the execution of the lease. First, Coastal notes Coates had returned division orders sent to it by Coastal in the past, and sometimes provided its own form division orders. Therefore, Coates knew that Coastal expected to receive the signed division order. Second, Coates had previously made demands for unspecified underpaid royalties for different leases, using the same form demand letter. Because the demand letter for the F lease did not

indicate whether it was for unpaid or underpaid royalties and looked virtually identical to the prior letters, Coastal maintains that Coates did not provide adequate notice of default.

■ When the terms of a lease are unambiguous, the parties' objective intent is determined by the language of the lease itself without resort to parol evidence. *See Madeley*, 626 S.W.2d at 731; *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 757 (Tex.App.—El Paso 1993, writ denied). Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996). A contract is ambiguous if, after applying the established rules of construction, it remains reasonably susceptible to more than one meaning. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). Parol evidence cannot be admitted for the purpose of creating an ambiguity. *See Nat'l. Union Fire Ins. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995).

■ Here, the lease is worded so that it can be given a definite meaning, and is not ambiguous. Under the terms of the lease, Coates was required to provide Coastal with a written demand that Coastal pay royalties owed. Thus, evidence of dealings between the parties may not be considered. We conclude Coates literally complied with the demand provision of the lease. The lease did not require Coates to identify the particulars of nonpayment,[3] and while we construe the lease against forfeiture, we may not read such a requirement into the lease. There is no genuine issue of material fact that Coates gave Coastal written demand as required in the

---

3. An example of a clause in a lease requiring the lessor to indicate the specifics of the breach is found in 4 Howard R. Williams & Charles J. Meyers, Oil & Gas Law § 682.1, at 340 (1984) (citing *Ridl v. EP Operating Limited Partnership*, 553 N.W.2d 784 (N.D.1996)). The clause provides, in relevant part, "In the event the Lessor considers that Lessee has failed to comply with an obligation hereunder, express or implied, Lessor shall *notify Lessee in writing specifying in what respect Lessor claims Lessee has breached this lease.* . . ."

lease. We overrule appellant's second issue.

By its first and third issues, Coastal contends the trial court erred in granting summary judgment, and in denying its cross-motion for summary judgment because it did not wrongfully or unreasonably fail to pay royalties.

In its pleadings and summary judgment evidence, Coastal maintained that it suspended royalty payments because Coates failed to sign its division order for the F–6 well. As Coastal notes, a lessee is entitled to withhold royalty payments pending receipt of a signed division order. *See* TEX. NAT. RES.CODE ANN. § 91.402(c)(1) (Vernon Supp.2000). Therefore, Coastal contends it did not act wrongfully or unreasonably in withholding royalty payments. Coastal responds that it did not sign the division order because it contained an unauthorized provision relating to indemnification, and therefore, Coastal was unjustified in withholding payments.

■ As previously discussed, the lessor was entitled to terminate the lease if the lessee wrongfully *or* unreasonably withheld royalty. Thus, we must determine whether Coastal acted wrongfully or unreasonably in withholding royalty as a matter of law. The reasonableness of Coastal's actions is arguably a fact issue because even if Coastal was unjustified in withholding royalty based on Coates's failure to sign the division order, Coastal may have acted reasonably considering the parties' dealings with one another and based on its good faith interpretation of the division order statute. The lease, however, permitted Coates to terminate if Coastal unreasonably *or wrongfully* withheld payments. Thus, we must determine whether Coastal wrongfully withheld payments.

■ "Language used by parties in a contract should be accorded its plain grammatical meaning unless it definitely appears that the intention of the parties would be thereby defeated." *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.

1985). Black's Law Dictionary defines "wrongful" as "injurious, heedless, unjust, reckless, unfair; it implies the infringement of some right, and may result from disobedience to lawful authority." BLACK'S LAW DICTIONARY 1110 (6th ed.1991). Webster's Dictionary defines "wrongfully" as "unjustly; in a manner contrary to the moral law or to justice...." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 2112 (2d ed.1980). Webster's also defines wrongful as "full of wrong; unjust, unfair or injurious," and "unlawful." *Id.*

■ The F lease provided "[i]t shall not be considered that royalty or other payments out of production (or any portion thereof) are being wrongfully or unreasonably withheld if the same is withheld by virtue of or resulting from any law, order, directive or regulation of any governmental or regulatory body having jurisdiction." Therefore, if Coastal withheld payment in accordance with the natural resources code, which permits withholding of royalty payments pending receipt of a signed division order, it was not acting wrongfully under the terms of the lease. From this provision, it appears the parties intended to use the plain, ordinary, and generally accepted meaning of the term wrongfully; thus, Coastal wrongfully withheld royalty payment if it did so unjustly or unlawfully.

The Texas Natural Resources Code provides that a payor is entitled to receive a signed division order from a payee as a condition for the payment of proceeds from the sale of oil and gas. *See* TEX. NAT. RES.CODE ANN. § 91.402(c)(1) (Vernon Supp.2000). However, "[i]f an owner in a producing property will not sign a division order because it contains provisions in addition to those provisions provided for in this section, payor shall not withhold payment solely because of such refusal." *See id.* § 91.402(e). Section 91.402(c)(1) expressly limits the provisions that the division order for oil and gas production may contain. *See id.* § 91.402(c)(1). Regarding indemnification, that section states that the division order may only contain, *"un-*

*less otherwise agreed,* . . . an agreement to indemnify the payor and reimburse the payor for payments made if the payee does not have merchantable title to the production sold." *Id.* § 91.402(c)(1)(C) (emphasis added).

The division order for the F–6 well contained a provision stating the "owner agrees to indemnify and hold payor harmless from all liability resulting from payments made to the owner in accordance with such division of interest, including but not limited to attorney fees or judgments in connection with any suit that [affects] the owner's interest to which payor is made a party." The lease, however, was expressly executed without warranty of title. The parties had, therefore, otherwise agreed not to indemnify Coastal with respect to title. Consequently, the division order indemnity provision did not comply with section 91.402(c)(1)(C) and Coastal was not entitled to withhold payment on that basis. *See id.* § 91.402(e).

Coastal urges that it complied with section 91.402(d) of the code, which provides an alternative form of division orders. However, this section provides the division order form for "oil payments." *See id.* § 91.402(d). Because the F–6 well was a gas well, section 91.402(d) was inapplicable; the division order for the F–6 well must have complied with 91.402(c)(1).

▬ Coastal argues that although section 91.402(d) commences with language that it is the division order form for oil payments, it also applies to gas payments. First, Coastal notes that subsection (d) is an alternative to subsection (c), and that subsection (d) may satisfy the provisions of subsection (c). The relevant portion of subsection (d), however, provides, "[i]n the alternative, the provisions of Subsection (c) of this section may be satisfied by a division order for *oil payments* in substantially the following form and content. . . ." *Id.* § 91.402(d) (emphasis added). Subsection (c)(1), by contrast, provides the authorized provisions for a division order

for "the sale of oil and gas production. . . ." *Id.* § 91.402(c)(1).

Coastal next asserts 91.402(d) applies to gas payments because the division order form from that subsection contains the following statement, "[t]his agreement does not amend any lease or operating agreement between the interest owners and the lessee or operator or any other contracts for the purchase of oil or gas." *Id.* § 91.402(d). This text is found at the beginning of the division order form, prior to the actual provisions of the division order. A reading of the entire subsection, however, demonstrates that it only applies to oil payments. The division order form from section 91.402(d) provides, in part:

The following provisions apply to each interest owner ("owner") who executes this agreement:

TERMS OF SALE: The undersigned will be paid in accordance with the division of interests set out above. The payor shall pay all parties at the price agreed to by the operator for *oil* to be sold pursuant to this division order. . . .

PAYMENT: From the effective date, payment is to be made monthly by payor's check, based on this division of interest, for *oil* during the preceding calendar month from the property listed above. . . .

*Id.* § 91.402(d) (emphasis added). Furthermore, as discussed, the subsection begins by stating that it will serve as a division order form for oil payments.

Coastal also contends section 91.402(d) applies to gas payments because the general provisions found in that section apply to both oil and gas production. We find this argument unpersuasive. The usage of terminology in one section that is used throughout the natural resources code does not lead to the inference or conclusion that subsection (d) applies to oil and gas when it expressly states it applies to oil payments.

Finally, Coastal asserts there is no logical reason for treating oil and gas differently for purposes of division orders. Section 91.001(2) of the natural resources code

defines "gas" as "natural gas," while section 91.001(3) defines "oil" as "crude oil and crude petroleum oil." *See id.* § 91.001(2), (3). Thus, the legislature distinguished between the two terms in the code. "When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded." *Laidlaw Waste Sys. (Dallas) v. Wilmer,* 904 S.W.2d 656, 659 (Tex.1995). Notably, the legislature made other distinctions between oil and gas in the code, including providing a longer time period for gas payments to be made as compared to oil payments. *See* TEX. NAT. RES.CODE ANN. § 91.402(a) (Vernon Supp.2000).

We hold that section 91.402(d) applies to oil but not gas payments. Because the division order for the F–6 well contained terms in addition to those specified in section 91.402(c)(1), Coastal could not withhold royalty payments based upon Coates's failure to sign and return the division order. *See id.* § 91.402(e). Coastal's withholding of royalty was not authorized by the natural resources code and was therefore unlawful and wrongful. Moreover, Coastal was not entitled to rely upon the provision in the lease providing that withholding of royalty payments was not wrongful or unreasonable if done under "law, order, directive or regulation of any governmental or regulatory body having jurisdiction." It was wrongful for Coastal to withhold payments in light of its failure to comply with the division order statute. Accordingly, there is no genuine issue of material fact that Coastal wrongfully withheld royalty. The trial court did not err in granting summary judgment terminating the F lease for Coastal's non-payment of royalty on the F–6 well or in denying Coastal's cross-motion. Appellant's first and third issues are overruled.

The judgment of the trial court is AFFIRMED.