ACCEPTED
04-14-00905-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/26/2015 12:26:32 PM
KEITH HOTTLE
CLERK

NO. 04-14-00905-CV

* * *

IN THE COURT OF APPEALS
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/26/2015 12:26:32 PM
KEITH E. HOTTLE
Clerk

* * *

ESCONDIDO RESOURCES II, LLC,

Appellant

V.

JUSTAPOR RANCH COMPANY, L.C.,

Appellee

* * *

## APPELLEE'S RESPONSE TO APPELLANT'S REPLY BRIEF

Jose M. "Joe" Rubio, Jr.
State Bar No. 17362100
JOE RUBIO LAW FIRM
1000 Washington Street, Suite 4
Laredo, Texas 78040
Phone: 956-712-2223

Timothy Patton
State Bar No. 15633800
TIMOTHY PATTON, P.C.
14546 Brook Hollow Blvd. #279
San Antonio, Texas 78232
Phone: 210-832-0070

Patton G. Lochridge
State Bar No. 12458500
Carlos R. Soltero
State Bar No. 00791702
J. Derrick Price
State Bar No. 24041726
MCGINNIS LOCHRIDGE & KILGORE, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Phone: 512-495-6044

Attorneys for Appellees

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

Table of Contents ............................................................. i

Index of Authorities ........................................................ iii

I. Escondido's Interpretation of XIV's Opening Phrase Is Clearly Incorrect ............................ 1

II. All Royalty Payment Deadlines Are Meaningful Under Justapor's Construction ............................ 3

III. Escondido Mischaracterizes Justapor's Response to Its Nonpayment vs. Underpayment Argument ............................ 4

IV. Escondido Impermissibly Construes the Lease By Looking at the Harm Caused by Its Breach and Then Working Backward to Its Construction ............................ 5

V. Escondido's "$1 Underpayment" Argument Illustrates Both Its Flawed Working-Backward Approach to Lease Construction and to Oil and Gas Title Ownership ............................ 7

VI. The Record Conclusively Establishes That Escondido Never Made a Single True-Up Payment to Correct Its Underpayments in 2011, 2012 and 2013 ............................ 9

VII. Escondido's HSC Argument Misses the Dispositive Point ............................ 10

VIII. The Unchallenged Summary Judgment Conclusively Establishes that Escondido's Defenses to Lease Termination, Based on Jones' Conduct, Are Meritless ............................ 11

IX. Escondido Waived Its Appellate Waiver/Estoppel Arguments ............................ 12

X. Escondido's Curious Approach to "Witness Testimony" and the Proof on Its Intentional Underpayments ............................ 14

XI.     A Few Words About Justapor's Supposed Record "Confusion"     17
        Are Warranted

Prayer                                                              18

Certificate of Service                                              19

Certificate of Compliance                                          20

ii

# INDEX OF AUTHORITIES

Page

Coastal Oil & Gas Corp. v. Roberts,
    28 S.W.3d 759 (Tex. App.-Corpus Christi 2000,
    pet. granted, judgm't vacated w.r.m.)      8

Gibson v. Turner,
    294 S.W.2d 781 (Tex. 1956)      1

Hebisen v. Nassau Dev. Co.,
    754 S.W.2d 345 (Tex. App.-
    Houston [14th Dist.] 1988, writ denied)      2

Hitzelberger v. Samedan Oil Corp.,
    948 S.W.2d 497 (Tex. App.-Waco 1997, pet. denied)      3, 8, 9

Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,
    320 S.W.3d 829 (Tex. 2010)      3

McConnell v. Southside Indep. Sch. Dist.,
    858 S.W.2d 337 (Tex. 1993)      13, 14

Natural Gas Clearinghouse v. Midgard Energy Co.,
    113 S.W.3d 400 (Tex. App.-Amarillo 2003, pet. denied)      7

Natural Gas Pipeline Co. v. Pool,
    124 S.W.3d 188 (Tex. 2003)      7, 8, 9, 12

Range Res. Corp. v. Bradshaw,
    266 S.W.3d 490 (Tex. App.-Fort Worth 2008, pet. denied)      1

Tex. R. Civ. P. 11      12

Tex. R. Civ. P. 91a      12

Tex. R. Civ. P. 166a(c)      13, 14

Tex. R. Civ. P. 166a(i)      12

**I.      Escondido's Interpretation of XIV's Opening Phrase Is Clearly Incorrect**

After close to 100 pages of briefing, Escondido has finally discussed the opening phrase of the ipso facto termination provision of the Lease – the phrase establishing that the summary judgment on lease termination should be affirmed. As previously discussed, ipso facto termination under XIV is triggered if Escondido fails to pay royalties to Justapor "in the manner hereinabove provided." (Br.13-15, 34-35). Under any common sense reading, "the manner hereinabove provided" necessarily refers to the two "hereinabove" provisions in the Lease that define Escondido's royalty payment obligations to Justapor: III(b), requiring royalties to be paid based on the highest of the four price floors, and III(g), requiring true-up payments by the March 1 deadline for royalties underpaid during the preceding year. (*Id.*).

In response, Escondido essentially announces that any contract or lease that uses the words, "herein" or "hereinabove," is vague and ambiguous, citing one commentator's opinion that is unsupported by any case citations. (E.Rep.7, 12). In reality, Texas courts have repeatedly concluded that contracts and leases, including contractual provisions governing royalty and other payment obligations that use "herein" or "hereinabove," are clear, unequivocal and unambiguous as a matter of law. *See, e.g., Gibson v. Turner*, 294 S.W.2d 781, 782-88 (Tex. 1956); *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 494-96 (Tex. App.-Fort Worth

2008, pet. denied); *Hebisen v. Nassau Dev. Co.*, 754 S.W.2d 345, 350 (Tex. App.-Houston [14th Dist.] 1988, writ denied).

Next, Escondido creates a proximity test, claiming that because III(g)'s true-up provision appears "eight pages" earlier in the Lease than XIV, it is inconceivable that Escondido's failure to timely true-up could result in Lease termination. (E.Rep.7, 12). First, this argument is contrary to the just-cited cases recognizing that when a contract refers to payment obligations as provided "herein" or "hereinabove," that contract unambiguously incorporates those payment obligations whether they appear one page or twenty pages earlier in the document. Second, Escondido's arbitrary proximity test (stressing the *8* pages between XIV and III(g)) becomes nonsensical when you consider that Escondido has no problem at all with XIV's ipso facto termination language applying to its payment obligations in III(a) and (b) which appear *13* pages earlier in the Lease. (E.Rep.15).

In effect, Escondido has rewritten XIV's opening phrase to impermissibly restrict its scope to state "Royalties payable to Lessor in the manner hereinabove provided *in Paragraph III(a), (b) but not in Paragraph III(g)*." Escondido's interpretation also renders the opening phrase of XIV partially meaningless. XIV refers to Escondido's obligation to pay royalties to Justapor in "the manner hereinabove provided," and timely making true-up royalty payments under III(g) is

2

one of those "hereinabove provided" royalty payment obligations.  Yet, Escondido claims that the "hereinabove provided" language in XIV excludes III(g) and includes only III(a) and (b).

Under the case law cited in Escondido's brief, its effort to rewrite the Lease – a rewrite rendering a crucial Lease provision partially meaningless and failing to harmonize all of the Lease's provisions – is improper and unreasonable. (E.Rep.14, 16; *see* Br.28-31).  Because Escondido's construction of the Lease is unreasonable and Justapor's construes the Lease in its entirety, harmonizes all of its provisions and is reasonable, Escondido is not entitled to rely on cases precluding lease termination or forfeiture in which the lessor (unlike Escondido) proffered a reasonable construction.  *See Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 505-07 (Tex. App.-Waco 1997, pet. denied); *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010)(recognizing that construing contract to authorize forfeiture permissible absent reasonable construction precluding forfeiture).

## II.     All Royalty Payment Deadlines Are Meaningful Under Justapor's Construction

To be candid, Justapor's counsel does not fully understand Escondido's argument that under Justapor's construction either the annual true-up deadline or the 60-day deadline is meaningless.  (E.Rep.8, 13-14).  In any event, both

deadlines are meaningful under Justapor's construction, as well as being easily understandable and fully reconcilable with ipso facto termination under XIV.

As explained in detail by Justapor's owner, Jimmy Jones, who drafted these provisions: (1) if the lessee fails to make any royalty payment by the 60-day deadline, the Lease terminates on day 61; (2) if the lessee makes some payment by the 60-day deadline but underpays the required royalty, then the lessee has not paid royalties as required by the Lease; and then (3) if the lessee corrects the underpaid royalties by the March 1 deadline, the Lease remains in effect, but if the lessee does not, the Lease terminates. (Br.14-16, 34-35). Consequently, Justapor's construction reconciles and renders meaningful both the annual true-up deadline and the 60-day deadline, as well as all other provisions of the Lease governing Escondido's royalty payment obligations. (*Id.*).

## III. Escondido Mischaracterizes Justapor's Response to Its Nonpayment vs. Underpayment Argument

Justapor *is not arguing* that the Lease makes no distinction between nonpayment and underpayment. (E.Rep.17-19). As just discussed, the Lease distinguishes between nonpayments violating the 60-day deadline and underpayments violating the 60-day deadline.

Justapor *is arguing* that the Escondido-manufactured distinction, whereby ipso facto termination under XIV applies only to its complete nonpayment of a monthly royalty and not to its failure to correct underpayments through true-up

4

payments, is contrary to unambiguous Lease language. (Br.42-45). More specifically and as just discussed, Escondido's "distinction" ignores the opening phrase of XIV requiring Escondido to true-up underpayments by the annual March 1 deadline or face ipso facto termination. (*Id.*).

## IV.  Escondido Impermissibly Construes the Lease By Looking at the Harm Caused by Its Breach and Then Working Backward to Its Construction

Escondido still hasn't cited a single case to support its "disproportionate result" defense which is based on comparing the alleged amount of Escondido's investment in the Lease to the harm to Justapor caused by Escondido's breach and the benefits received by Justapor before the breach occurred. No such case exists.

If a lessee breaches its contractual obligations under an oil and gas lease and the lease unambiguously provides that such a breach results in lease termination, Texas courts have uniformly recognized that the lease terminates under Texas law. (Br.32-34, 47-48). Courts do not weigh the self-inflicted harm to the breaching party against the damages caused to and benefits received by the innocent, non-breaching party when deciding whether an unambiguous lease has terminated. Courts enforce the lease as written. (*Id.*).

When construing contracts years if not decades after their execution, courts do not retroactively determine the objective intentions of the parties at the time of contracting to avoid an oppressive or harsh result (E.Rep.32) based on the repercussions of a contract breach. To the contrary, courts construe contracts by

5

looking at the parties' intentions as expressed in their contracts at the time of their execution. (Br.28-29).

Imagine the havoc and uncertainty in legal and contractual relationships that would ensue if courts could summarily disregard legally enforceable agreements whenever they found that enforcing an agreement (that had indisputably been breached) would be inequitable because of a perceived "disproportionate" impact on the contracting parties. Take this case. Escondido claims that the loss of its alleged $31 million investment is disproportionate in light of the roughly $81,000 in unpaid royalties owed to Justapor. What if Escondido's lost investment was $2 million or $1 million or $100,000, would a court still be entitled to disregard the unambiguous Lease because it viewed the result as "disproportionate"? What would be the impact on this "disproportionate result" analysis if Justapor's lost royalties were $500,000? What is the ratio or trigger point for determining when a court is entitled to disregard an unambiguous contract under Escondido's "disproportionate result" test? And what is the appellate standard of review for this novel "equitable" approach to disregarding legally enforceable arguments?

The answer to all of these questions is that Escondido's "disproportionate result" defense does not exist and none of the above hypotheticals are relevant to determining the enforceability of an unambiguous contract. Courts do not retroactively determine the enforceability of a contract by engaging in a highly

6

fact-specific, cost-benefit analysis focusing on the relative positions of the contracting parties at the time of the contract breach occurring years after that contract was signed. As one court stressed:

> For a court to change the parties' agreement merely because it did not like the contract, or because one of the parties subsequently found it distasteful, would be to undermine not only the sanctity afforded the instrument but also the expectations of those who created and relied upon it.

*Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.-Amarillo 2003, pet. denied)

## V. Escondido's "$1 Underpayment" Argument Illustrates Both Its Flawed Working-Backward Approach to Lease Construction and to Oil and Gas Title Ownership

According to Escondido: "Yet Justapor's reading means that the lease would terminate because of even a $1 underpayment that Escondido does not catch and correct by March 1, even if Escondido does not learn about it until later. That interpretation is unreasonable and inequitable." (E.Rep.33).

Actually, Justapor's interpretation is 100% consistent with Texas law.

An oil and gas lease is a fee simple determinable conveyance. *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003). The lessee's interest is "determinable" because its interest terminates automatically and reverts to the lessor upon the occurrence of an event, such as the absence of production in paying quantities, or other terms or conditions that the lease specifies as causing lease

7

termination.  *Id.*  Indeed, several courts have held that a lessor's failure to comply with its royalty payment obligations violated a condition or special limitation in the lease and resulted in the lease terminating.  *See Coastal Oil & Gas Corp. v. Roberts*, 28 S.W.3d 759, 763 (Tex. App.-Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.); *Hitzelberger*, 948 S.W.2d at 503-04.

The amount by which the lessee fails to comply with a condition (whether it's $1, $100 or $81,000) has no effect on title because title reverts automatically to the lessor on failure of the condition.  It is a matter of the automatic reversion of title to the lessor and not the quantitative amount of the breach by the lessee.  *See Pool*, 124 S.W.3d at 192.

For example, the lessor in *Hitzelberger* missed two royalty payments due to a clerical error.  *Hitzelberger*, 948 S.W.2d at 502 n.1.  The court of appeals held that the lease terminated as a matter of law emphasizing that "it is the lessee's responsibility to comply with [the] lease."  *See id.* at 505-10.  (Br.33)(citing cases where courts held that oil and gas leases terminated due to lessee's $2.96 underpayment and late $50 payment).

Again, courts do not decide whether a lease has terminated based on the monetary significance of the contract breach or the reason for the failed condition – even though in this case, the record conclusively establishes that Escondido made the conscious decision to deliberately underpay Justapor.  (Br.19-25).  Courts

decide whether the lease terminated by objectively determining whether an event specified in the lease as causing lease termination did or did not occur. *See Pool*, 124 S.W.3d at 192.

Here, XIV provided: "In the event that such royalties are not paid and become delinquent ... this lease shall terminate ipso facto on the date that such royalties were due and not paid." (CR278)(emphasis in Lease). This clear and unequivocal language in XIV specifies the legal impact if Escondido breaches the determinable fee condition in the Lease (Escondido's obligation to pay royalties as "hereinabove provided"): Ipso Facto Termination. The amount of Escondido's breach is irrelevant. Once Escondido violated its obligation to pay true-up royalties as "hereinabove required" by the Lease, the Lease terminated and automatically reverted to Justapor. *See Hitzelberger*, 948 S.W.2d at 505-09.

## VI. The Record Conclusively Establishes That Escondido Never Made a Single True-Up Payment to Correct Its Underpayments in 2011, 2012 and 2013

Escondido's claim, that it didn't violate its obligation to make true-up payments because it made "reconciliation payments," mischaracterizes the record. (E.Rep.21). The record conclusively establishes that Escondido never made a single payment under III(g) to cure its underpayments in 2011-2013. (Br.20-21, 25). Indeed, Deupree testified unequivocally that Escondido never made any true-up payments to correct those underpayments. (*Id.*; CR563-64, 584).

9

As also conclusively established by the record, these "reconciliation payments" had nothing to do with Escondido's underpayments in 2011-13. Those payments were intended by Escondido to reconcile an increase in Justapor's royalty interest on one well, the Augusta-Kenton No. 5H well, and to reimburse Justapor for overcharged taxes. (CR1376-77, 1401-02, 1411).

## VII. Escondido's HSC Argument Misses the Dispositive Point

Justapor's initial brief demonstrated that Escondido's Houston Ship Channel (HSC) argument is contrary to a commonsense reading of the amendment and its own Vice-President's testimony, as well as being nonsensical. (Br.9-12, 36-39). Let's assume for the moment, though, that Escondido is correct and the HSC amendment replaced the other pricing floors.

It is undisputed that Escondido never paid Justapor royalties based on the HSC price. As its President readily conceded, Escondido made the conscious decision to pay Justapor less than the HSC price and Escondido never made any true-up payments to correct those deliberate underpayments to Justapor. (Br.19-21)(quoting Deupree).

So ... even if Escondido has somehow correctly construed the scope of the HSC amendment, the record conclusively establishes that Escondido still underpaid Justapor because Escondido didn't even pay Justapor as required by its own construction of the amendment.

**VIII. The Unchallenged Summary Judgment Conclusively Establishes that Escondido's Defenses to Lease Termination, Based on Jones' Conduct, Are Meritless**

Escondido's continued insistence that it can rely on defenses based on Jimmy Jones' conduct, despite the unchallenged summary judgment absolving him of having breached any fiduciary obligations or having done anything inappropriate, borders on frivolous.

Justapor sued Escondido alleging lease termination. In response to Justapor's lease termination claim, Escondido raised defenses alleging misconduct by Jones. The trial court determined that those defenses were meritless as a matter of law for multiple independent reasons. (Br.49-52). It is undisputed that Escondido has not challenged the summary judgment disposing of those defenses or, in any fashion, argued that the summary judgment is incorrect. Under this record, all of Escondido's defenses and accusations based on Jones' conduct must be considered meritless as a matter of law by this Court. (*Id.*).

Escondido contends that the unchallenged summary judgment "does not extend to Justapor's *affirmative* claim of lease termination on which it bears the burden of proof." (E.Rep.33-34)(Escondido's emphasis). That contention misplaces and misconstrues the burdens of proof imposed on the parties and ignores the legal effect of the unchallenged summary judgment. To prove its entitlement to lease termination, Justapor was required to establish that the Lease

11

provided that it would terminate on the occurrence of a specified event and that this event occurred. *See Pool*, 124 S.W.3d at 192. Escondido's personal attacks on Jones are irrelevant to Justapor's burden of proof on lease termination.

To the extent that Escondido raised personal attacks on Jones as defenses to lease termination, Justapor sustained its summary judgment burden to establish that those defenses are meritless as a matter of law. (Br.51-52). Escondido, not Justapor, had the burden of proof to raise fact issues on its defenses involving Jones' conduct. It did not, and the trial court was required to grant summary judgment in favor of Justapor on no-evidence grounds. *See* Tex. R. Civ. P. 166a(i). Escondido has not complained on appeal that the trial court erred by concluding that Escondido failed to sustain its burden of proof.

Escondido's final word on this issue is a grandiose reference to what "the law is not required to tolerate." (E.Rep.34). What the law should not tolerate is a party making numerous slanderous (albeit privileged) accusations, losing by summary judgment because its accusations are meritless and then acting on appeal as if it had never lost the summary judgment.[1]

## IX.    Escondido Waived Its Appellate Waiver/Estoppel Arguments

Escondido readily acknowledges its failure to mention "waiver" or "estoppel" by name in its summary judgment response. (E.Rep.28). Escondido

---

[1] Escondido never joined Jones as a party personally in this suit nor has Escondido otherwise sued Jones. Of course, had Escondido done so, the company would have opened itself up to a counterclaim for damages by Jones. *See* Tex. R. Civ. P. 11; Tex. R. Civ. P. 91a.

12

nevertheless claims that it implicitly raised these affirmative defenses in its response at CR951-53. (*Id.*). Those cited pages are not even part of Escondido's substantive defensive response to Justapor's motion for summary judgment. They appear in the "Background Facts" section of Escondido's response discussing its summary judgment evidence. (CR943-56). In the substantive "Argument and Authorities" section, where Escondido expressly identified and argued numerous defensive theories, the concepts of waiver and estoppel were never mentioned, much less argued.

Rule 166a states: "Issues not expressly presented to the trial court by ... [the] response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). Consistent with Rule 166a(c)'s mandatory language, the supreme court has emphasized: "*issues a non-movant contends avoid the movant's entitlement to summary judgment* must be expressly presented by written answer to the motion or by other written response to the motion and *are not expressly presented by mere reference to summary judgment evidence*." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)(emphasis added). (Br.40-41)(citing cases).

As established by *McConnell*, Escondido's "mere reference to summary judgment evidence" in its response – a response that never mentioned, much less argued, the defenses of waiver and estoppel – does not "expressly present" those defenses as required by Rule 166a. Consequently, Escondido's appellate

13

waiver/estoppel arguments cannot be considered as a ground for reversal and were waived. (Br. 40-41).

The *Fountains Int'l* case cited by Escondido is not in point. (E.Rep.29). It does not involve summary judgment practice where issues must be "expressly presented" to be preserved for appellate review. *See McConnell*, 858 S.W.2d at 341; Tex. R. Civ. P. 166a(c). Rather, it involves the unrelated issue of the sufficiency of a petition to state a claim for relief under fair notice standards.

Lastly, Escondido's claim that Justapor did not respond on the merits to its waiver/estoppel arguments, other than citing "its entire statement of facts," is incorrect. (E.Rep.29). Justapor specifically identified the two sections of its Argument that addressed why those defenses are legally and factually meritless. (Br.41 n.7).

## X. Escondido's Curious Approach to "Witness Testimony" and the Proof on Its Intentional Underpayments

Escondido has an exceedingly curious and decidedly one-sided view of "witness testimony" regarding the Lease and proof on its "intentions" when making royalty payments.

In its initial brief, Escondido went to great lengths to discuss what its officers supposedly believed the Lease and the HSC amendment to mean. Justapor, in its reply brief, pointed out that virtually everything that Escondido said about its officers' purported understandings about Escondido's royalty payment

14

obligations and the events occurring after the Lease was signed was not just contrary to their deposition testimony, but largely consisted of subjective beliefs irrelevant to determining Escondido's obligations under the unambiguous Lease.

Now, Escondido wonders why we are talking about "witness testimony" about impact of the HSC amendment and other issues. (E.Rep.24). Well ... we are talking about (and Justapor is quoting) testimony from President Deupree and Vice-President Wrather because Escondido's descriptions of significant events and its characterization of Deupree and Wrather's testimony in its initial brief was, quite often, directly contrary to their deposition testimony.

More specifically, we are discussing/quoting Deupree and Wrather because Escondido's own officers' testimony demonstrates that, among other things: Escondido's appellate argument about the HSC amendment is contrary to any straightforward reading of that document as Wrather readily agreed; Escondido's appellate argument about Justapor interfering with gas sales is contrary to both Wrather and Deupree's testimony; Escondido's appellate argument that it didn't underpay royalties to Justapor is contrary to Deupree's testimony that Escondido underpaid Justapor even under Escondido's construction of the HSC amendment; Escondido's appellate argument that it made true-up payments to correct its underpayments in 2011-13 is contrary to both Deupree and Wrather's testimony … and so on. (Br.10-12, 13, 20-25, 37-38).

15

Escondido also professes confusion about "why Justapor emphasizes Escondido's intent regarding the amount of royalty payments." (E.Rep.21). But in the very next sentence, Escondido announces "that it in fact paid the royalties it believed the parties had agreed it would pay." (*Id.*). So ... evidently, what an Escondido officer believes about Escondido's royalty obligations under the Lease and its underlying intent when making royalty payments only matters if that belief/intent supports Escondido's appellate arguments but not if it demonstrates that the summary judgment should be affirmed.

In truth, the uncontroverted proof on Escondido's intentions – its knowing and deliberate underpayment of royalties for years – directly supports the trial court's conclusion that Escondido was guilty of bad faith trespass as a matter of law. Escondido was well aware of the consequences of violating its royalty obligations under the Lease – ipso facto termination – but it deliberately underpaid Justapor anyway, continued to enter Las Tinajas and refused to leave the ranch and give up the Lease even after it was caught shorting Justapor. (Br.17-21, 24, 46). Those are not the actions of a lessor with an "honest and reasonable belief" in its right to continue to develop a tract of land. (Br.46-47, 55-59).

In its reply brief, Escondido announces that there is a "bona fide dispute" regarding its right to the Lease. (E.Rep.36). Who was it at Escondido that believed there was a bona fide dispute? This brings up the same question that

16

Justapor asked in its initial brief that Escondido has never answered: "Yet, its brief announces 'Escondido had a good-faith belief in the superiority of its title.' (Br.68). Who is it exactly at Escondido that supposedly had this good faith belief? It certainly wasn't Deupree or Wrather as is conclusively demonstrated by their deposition testimony and exhibits which, on appeal, Escondido treats as nonexistent [and still treats as nonexistent in its reply brief]." (Br.59).

## XI. A Few Words About Justapor's Supposed Record "Confusion" Are Warranted

Escondido's discussion of the Abington affidavit is borderline disingenuous. Escondido acts as if this affidavit involved some inconsequential motion, like a motion to compel discovery. (E.Rep.9). Actually, when Escondido filed Abington's testimony about its alleged investment in the Lease for the first time, that affidavit supported Escondido's motion for summary judgment – the motion which is the basis for Escondido's request for a reversal and rendition in this Court. (CR798, 800, 890-91). The trial court sustained Justapor's objections to that affidavit, including Abington's conclusory statement about Escondido's investment in the Lease – which appears in both affidavits. (CR1149, 1342, 1887).

As a practical matter, however, the critical point for appellate review is that Abington's testimony, whether successfully objected-to or not, is conclusory as are all other materials cited by Escondido to support the amount of its alleged investment in the Lease. (Br.54-55). There is simply no probative evidence in the

record on any dollar figure involving Escondido's alleged investment – a critical component of Escondido's "equitable" arguments. (Br.47-48, 54-55).

Escondido's brief initially claimed that it would later identify Justapor's other record citation "mistakes" (E.Rep.9). On the isolated occasions that Escondido claims that Justapor mistakenly characterized testimony, Escondido is incorrect. Justapor isn't characterizing what an Escondido officer said; Justapor is quoting him verbatim. (*Compare* Br.11 w*ith* E.Rep.26).

### PRAYER

Justapor respectfully requests the Court to affirm the trial court's judgment.

Respectfully submitted,

MCGINNIS LOCHRIDGE & KILGORE, L.L.P.

Patton G. Lochridge
State Bar No. 12458500
plochridge@mcginnislaw.com
Carlos R. Soltero
State Bar No. 00791702
csoltero@mcginnislaw.com
J. Derrick Price
State Bar No. 24041726
dprice@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone No.: (512) 495-6044
Facsimile No.: (512) 505-6344

By: /s/ Patton G. Lochridge
Patton G. Lochridge

18

Jose M. "Joe" Rubio, Jr.
State Bar No. 17362100
joerubio@joerubiolawfirm.com
JOE RUBIO LAW FIRM
1000 Washington Street, Suite 4
Laredo, Texas 78040
Telephone No.: (956) 712-2223

Timothy Patton
State Bar No. 15633800
tpatton@tp-pc.com
TIMOTHY PATTON, P.C.
14546 Brook Hollow Blvd. #279
San Antonio, Texas 78232
Telephone No.: (210) 832-0070
Facsimile No.: (210) 579-1665

By: /s/    Timothy Patton
          Timothy Patton

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2015, I electronically filed the foregoing Appellee's Response to Appellant's Reply Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. James P. Keenan
keenan@buckkeenan.com
Mr. J. Robin Lindley
lindley@buckkeenan.com
Buck Keenan, LLP
700 Louisiana, Suite 5100
Houston, Texas 77002

Ms. Kirsten Castañeda
kcastaneda@adjtlaw.com
Alexander Dubose Jefferson &
Townsend LLP
4925 Greenville Avenue, Suite 510
Dallas, Texas 75206

Mr. Robert Dubose
rdubose@adjtlaw.com
Alexander Dubose Jefferson &
Townsend LLP
1844 Harvard Street
Houston, Texas 77008

Mr. Wallace B. Jefferson
wjefferson@adjtlaw.com
Ms. Rachel A. Ekery
rekery@adjtlaw.com
Alexander Dubose Jefferson &
Townsend LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701

/s/ Timothy Patton
Timothy Patton


## CERTIFICATE OF COMPLIANCE

I hereby certify that this Appellee's Response to Appellant's Reply Brief was prepared using Microsoft Word 2010 (Microsoft Office Home and Business 2010) which indicated that the total word count (exclusive of items listed in Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure) is 3,878 words.

/s/ Timothy Patton
Timothy Patton